## Case No. 15,642.

### UNITED STATES v. LUNT.

[18 Law Rep. 683.]

District Court, D. Massachusetts.   Dec., 1855.

CRIMINAL LAW—FORCING ON SHORE AND LEAVING BEHIND SEAMEN.

1. Masters must act on their own responsibility in leaving men in foreign ports, on account of misconduct. It is proper for a master to take the advice of the consul, as of any other judicious person, but his opinion is only advice.

[Cited in Coffin v. Weld, Case No. 2,953.]

2. To justify leaving men in a foreign port, there must be an urgent physical or moral necessity, i. e. such an exigency as would control the judgment of men of reasonable firmness for shipmasters. And a greater exigency would be required to justify leaving men at some ports than at others.

3. On a criminal prosecution for such an offence, the defendant is not guilty if he acted under an honest mistake of judgment, and not from malice, i. e. from the intentional violation of known duty.

This was an indictment against the master of the ship Humboldt [Alfred M. Lunt], for forcing on shore and leaving behind, at Manilla, three of his crew. Two previous trials, one of Captain Lunt for shooting at his crew, and the other of the rest of the crew for mutiny, had resulted in the acquittal of Captain Lunt, and the conviction of the men. [See Case No 15,643.] Captaint Lunt offered in his defence, the certificate of the American consul at Manilla that the men were detained by him to be sent home in another vessel for trial on a charge of mutiny. This was objected to, and ruled out as incompetent. There was then no direct proof that the removal and detention of the men was by the advice or sanction of the consul, as none of the officers or crew were on shore, and the consul did not come on board. The only evidence was, that the master put the men in irons, took them ashore with him in a public guard boat, with soldiers, and that the men did not return 'n the ship.

B. F. Hallett, U. S. Dist. Atty.
R. H. Dana, Jr., for defendant.

After being out seven hours, the jury reported that they had agreed on a verdict of not guilty as to the leaving of one of the men, and disagreed as to the other two, and were discharged.

---

## Case No. 15,643.

### UNITED STATES v. LUNT.

[1 Spr. 311;[1] 18 Law Rep. 622.]

District Court, D. Massachusetts.   Dec. 14, 1855.

ASSAULT WITH DANGEROUS WEAPON — MALICE — MASTER OF VESSEL—BURDEN OF PROOF.

1. In an indictment for an assault with a dangerous weapon, under the United States statute, the word "assault" carries with it an allegation of illegality.

2. Malice is not an ingredient in this offence.

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

3. The burden of proof does not shift.

4. The master of a vessel has a right to defend his authority.

5. If from the grossly mutinous and menacing misconduct of the seamen, he has reason to believe and does believe that the use of a deadly weapon is necessary, he may use it, although the necessity be apparent only.

This was an indictment [against Alfred M. Lunt] for assaulting, with a dangerous weapon, several of the crew of the ship Humboldt, of which the defendant was master.

The facts, as disclosed by the evidence, were as follows: The vessel, with $28,000 of specie on board, was on her passage from San Francisco to Manilla. The crew consisted of fourteen men, who were all foreigners, and shipped in San Francisco. On the morning of the difficulty, a man named Ned had misbehaved at the wheel, and seized the captain; and the captain, with the aid of two mates, got him in irons and placed him in a state-room. While they were doing this, a large man named Rice, who had taken the wheel, left it, and refused to return to it, and attempted to interfere with the officers. Soon after this the larboard watch, headed by Rice, came aft and demanded to have Ned released. This the master refused. It was conceded, by the government, that the conduct of Ned was inexcusable, and that the master was justified in putting him in irons, and in refusing to relase him, on the request of the watch. The two officers testified that when they were trying to secure Ned, he tried to get hold of his knife, and called out to the men, "Now, boys, is your time to rise and take the ship." The officers also testified that, in the course of the morning, they saw several men of the watch below, on deck, and grinding their sheath-knives, and overheard one of them using threatening language about the master, and that they reported these events to the master; that the master then held two conferences with his officers and the only passenger, Mr. Baker, in which it was advised that they should be prepared with fire-arms, if necessary, for defence. The crew, who were witnesses, denied all knowledge of the grinding of the knives and of the threatening language; but the affidavits of two of the crew, taken soon after their arrival in Boston, were produced, in which they admitted these facts. One knife was produced, ground to a point on both sides, which was found on deck soon after the affray. Immediately after dinner, all hands came aft in a body, and requested the release of Ned. This the captain again refused. They then said they would do no more duty until he was released. The men all stood together on the port side of the quarter-deck. Captain Lunt said: "There must be some good men among you who will go to work. Any man who will return to his duty, go over on the starboard side."

No man went. He then said: "Any man who will return to his duty, hold up his hand." No man raised his hand. [They had their sheath-knives by their sides, and one of the officers testified that some put their hands on them.] [2] Captain Lunt then drew his pistol, which was a small five-barrelled revolver, and told the men that if they did not return to duty, he should be obliged to fire upon them. No man spoke, and he fired among them. At this point there was a conflict of testimony. The crew testified that they then cried out that they would return to duty, and ran forward to the forecastle, and that the captain followed them, and fired upon them as they ran, and again after they got into the forecastle. The chief mate, at the time the master fired, took his gun, which was a fowling-piece loaded with small bird-shot, and fired once. The officers testified that the captain fired only twice, and before the men turned, and that the men made no offer to return to duty, until after they came from the forecastle; also, that the captain reasoned and remonstrated with them before he fired. One man received a pistol-ball in his cheek, and two were wounded in the side and back, with bird shot. No one was permanently injured. After this, no more difficulty occurred on board. Ned was carried in irons to Manilla, and there he, together with Rice and one other, were delivered to the consul, and retained by him to be sent home in another vessel. The passenger remained in Manilla, and could not be used as a witness.

Mr. Dana, for defendant, contended that the circumstances showed, to a reasonable judgment, such a danger to life, limb and property, as justified the resort to fire-arms by the weaker party against the stronger. And further, that the rights of a master of a ship are not measured by the law of self-defence; since he acts in an office and trust, and must protect the persons and property entrusted to him, and to that end must vindicate his authority, at any hazard to himself; that he has no right to retreat or purchase safety by concession; and even if there is no threat or violence, or impending danger to life or limb, he must use such weapons as will enable him to subdue opposition, and compel a return to duty. He further contended, that the charge of "assaulting" with a dangerous weapon, carried with it the ingredient of malice, and that the burden of proof was on the government.

Mr. Hallett, U. S. Dist. Atty., contended that, if the evidence established the fact that the master used a dangerous weapon, the burden of proof was on him to establish the justification, and that malice need not appear. He also contended that the use of the weapon could only be justified by proof

2 [From 18 Law Rep. 622.]

of an impending danger to life or limb, or of great bodily harm, and that the evidence did not disclose this.

SPRAGUE, District Judge, charged the jury in full upon the law applicable to the case. He said the word "assault," in the indictment, carried with it the allegation of illegality. It required proof of an unjustifiable offer, or attempt, to do bodily harm to another; but that malice was not an ingredient in this offence, and need not be proved. The burden of proof did not shift. It was on the government, throughout, to establish the fact of an unjustifiable use of the weapon. If the jury were in reasonable doubt, on all the evidence, as to the guilt, they must acquit. On the main question, he ruled that the master of a vessel has not only the right, which every man has, of self-defence against impending danger to himself or his property, but he has also the right to defend his authority. It is his duty to maintain the supremacy of lawful authority over the crew who rise against it. The law requires that he should use no more force than is necessary to accomplish the end. The law is tender of human life. It does not allow the use of deadly weapons, except from necessity. That necessity, however, is not limited to mere personal self-defence. The master of a ship is not bound to surrender his command, in order to avoid a conflict with the crew, but may defend his authority against illegal violence, and may use such force as is necessary for that purpose, and, in some cases, he may use such force as appears to be necessary. If, from the grossly mutinous and menacing misconduct of the men, he, as a man of ordinary firmness, has good reason to believe, and does believe, that the use of a deadly weapon is necessary to protect his authority as master, and to prevent his being deprived by force and violence, of the lawful exercise of his command, he will be justified in using a deadly weapon, although it should subsequently appear, that the necessity was apparent only and not real. As such necessity alone justifies the use of deadly weapons, so it measures the extent of such use. Milder measures must be adopted, whenever they can be with safety. The master must not act from passion, or the pride of command, or the ambition to gain a reputation for energy and promptness, or from that timidity or unmanly fear which does not belong to men of ordinary firmness. It is the duty of the jury to take into consideration all the evidence, to determine from this what the circumstances were, as they presented themselves to the master, at the time, and to apply to his conduct the test that has been laid down.

The jury returned a verdict of not guilty.

[NOTE. For a hearing on an indictment against the master for forcing three of the crew to remain on shore at Manilla, see Case No. 15,642.]

See Roberts v. Eldridge [Case No. 11,901]; U. S. v. Colby [Id. 14,830]; and U. S. v. Borden [Id. 14,625].