MATTIE    BOOHER,    Respondent,    v.    RUSSELL TRAINER, Appellant.

Kansas City Court of Appeals, June 2, 1913.

1. **DAMAGES: Assault With Intent to Commit Rape.** The plaintiff sued in a civil action to recover compensatory and punitive damages from the defendant for an assault with intent to commit rape. The plaintiff took the defendant home from a neighboring town, in his buggy, and while on the road placed his person on the plaintiff with an intent to force her

to have carnal intercourse with him against her will. For which assault the plaintiff recovered $1000 compensatory and $1000 punitive damages. *Held*, that the verdict was not excessive.

2. **EVIDENCE UNCORROBORATED: Criminal Law: Rape.** In a criminal prosecution for rape, if the defendant testifies and denies the rape and the prosecutor stands alone, unsupported and uncorroborated, there is no such equipoise of oath against oath as will overthrow a conviction, and the prosecution will not, on that account, fail for want of sufficient evidence.

3. **INSTRUCTION: Criticism: Evidentiary Facts.** An instruction which states that if the jury believe "from a preponderance of the evidence that on the night of July 4, 1912, while the plaintiff was riding in a buggy with the defendant, he took hold of plaintiff and against her will laid his hands upon her in a lustful way, without her consent and against her will, then your verdict must be for the plaintiff," is not subject to criticism that it singles out and emphasizes certain isolated evidentiary facts.

4. **WITNESS: Presumption: Failure to Call.** The failure of a party to call a friendly witness having personal knowledge of the facts in issue raises a presumption or inference that the witness's testimony would have been detrimental to him. But the jury might well have indulged that inference, and still believed that the party told the truth about these preliminary incidents.

Appeal from Mercer Circuit Court.—*Hon. G. W. Wanamaker*, Judge.

AFFIRMED.

*Platt Hubbell* and *George Hubbell* for appellant.

(1) A conviction in cases of either incest or rape may be had upon the uncorroborated evidence of the prosecutrix, but when the evidence of such prosecutrix is of a contradictory nature, or when applied to the admitted facts in the case, her testimony is not convincing, but leaves the mind of the court clouded with doubts, she must be corroborated, or the judgment cannot be sustained. State v. Goodale, 210 Mo. 290; State v. Brown, 209 Mo. 413; State v. Tevis, 234 Mo. 284; Robinson v. Musser, 78 Mo. 153; Deane v. Transit Co.,

192 Mo. 585. (2) Courts are not such slaves to the forms of procedure as to surrender their own intelligence to an array of witnesses testifying to an impossibility. They are not required to give credence to a statement that would falsify well known laws of nature though a cloud of witnesses swear to it. Weltmer v. Bishop, 171 Mo. 116; 14 Ency. of Ev., 132, 133, 134, 135, 136, 137, 138, 139, 140.

*Ben F. Kesterson, L. B. Woods* and *Orton & Orton* for respondent.

That the transcript presents a state of degradation that challenges credulity must be conceded and yet our statutes on incest and rape attest that these crimes are within the experience of our courts and legislatures. To justify the court in reversing a case upon the weakness of the testimony, the verdict must be irreconcilable with human experience. State v. Sichrist, 226 Mo. 582.

JOHNSON, J.—Defendant appealed from a judgment for $1000 compensatory and $1000 punitive damages recovered by plaintiff in the circuit court in a civil action for an assault with intent to commit rape, alleged to have been committed by defendant on the night of July 4, 1912.

The parties lived on adjoining farms in Mercer county ten or twelve miles southwest of Princeton, the county seat, and each was twenty years of age. Defendant had married an intimate friend of plaintiff but his wife had died about a year before and he was living with his father-in-law. Plaintiff had been living with her father and mother with the exception of brief periods spent in attending a business school in Chillicothe and in working in a hotel in Memphis, Missouri. She had returned home from the latter place about two weeks before the event in controversy, and in company with an elder sister and younger brother, drove

to Princeton in a buggy to attend a Fourth of July celebration. Defendant also attended and during the festivities met plaintiff and offered to take her home in his buggy. There is a sharp dispute in the evidence over the issue of which one sought the companionship of the other. Plaintiff states that at first she refused defendant's invitation but changed her mind and accepted after he spoke of his loneliness and of the close friendship that had existed between her and his departed wife. On the other hand defendant says that plaintiff first sent a message to him by her brother to the effect that she wished to see him and when they met asked him to take her home. This issue, in common with other issues of fact, was decided by the jury adversely to defendant and for present purposes we shall regard it as conclusively settled and shall accept as proved the statement of plaintiff that she yielded somewhat reluctantly to the importunities of defendant that he be allowed to take her home.

We do not agree with the argument that the failure of plaintiff to call her brother as a witness to contradict defendant would warrant us in rejecting her testimony on this issue as unworthy of belief. We recognize the rule "that the failure of a party to call a friendly witness having personal knowledge of the facts in issue, raises a presumption or inference that the witness's testimony would have been detrimental to him." [22 Am. & Eng. Ency. of Law (2 Ed.), 1261.] But the jury well might have indulged that inference and still believed that plaintiff told the truth about these preliminary incidents. The questions of the credibility of witnesses and of the weight to be given their testimony are jury questions and whenever we find, as we do here, that their solution of such issues has substantial evidence behind it, we do not interfere.

Plaintiff states that she and defendant started home at half past eleven o'clock that evening and that as soon as they were well out of town he declared his

purpose to have carnal knowledge of her at all hazards and regardless of her desires. A physical struggle then ensued between them that continued with intermissions all the way home. Plaintiff successfully resisted these onslaughts but defendant would not desist and, despite her pleadings and resistance, sought in every way and used his strength to the utmost in persistent efforts to overcome her. We shall not recite the disgusting details of the evidence. Suffice it to say that the testimony of plaintiff tends to show that against her will or consent defendant used physical violence in an effort to force her to submit to him.

Defendant admits that he manifested a purpose to have sexual intercourse but only in response to her amatory advances and that he desisted on being told she was unwell. Plaintiff does not impress us favorably. She speaks too knowingly and freely of obscene matters in obscene terms for a modest maiden and in all likelihood her lack of maidenly decorum led defendant to believe she would fall an easy and willing prey to his unmastered importunities. Though coarse and unrefined, the evidence shows that she is a girl of good character and reputation and we think defendant's testimony, as a whole, strongly corroborates her statement that against her will he resorted to physical violence to overcome her opposition to his purpose.

Counsel for defendant invoke the rule frequently applied in cases of this nature that where the evidence of plaintiff is opposed to the conceded physical facts of the occurrence and to the common and natural manifestations of feminine instinct and impulses, it will be disregarded by the courts, but we hold that the evidence of plaintiff will successfully withstand the test of that rule. In a criminal prosecution for rape, it is said by the Supreme Court "if the defendant testifies and denies the rape, and the prosecution stands alone, unsupported and uncorroborated, there is no

such equipoise of oath against oath as will overthrow a conviction and the prosecution will not on that account fail for want of sufficient evidence.'' [State v. Marcks, 140 Mo. 656; State v. Dusenberry, 112 Mo. 277; State v. De Vorss, 221 Mo. 469; State v. Sechrist, 226 Mo. 574.]

Plaintiff's testimony does not stand alone and un-corroborated. As we have said she is aided by admissions of defendant notwithstanding his vigorous denial of lustful violence. She is also corroborated by the testimony of her mother and sister. Her sister was awake when she returned home and heard defendant's parting injunction that she refrain from speaking of what had just occurred. When plaintiff entered the house her sister observed her condition, her disheveled appearance and nervous excitement and heard from her lips the story of the assault. She also found that plaintiff's clothing had been torn in the encounter and that she had bruises on her person and marks of where she had been stuck by defendant with a pin. They waited until next morning before telling their mother of what had taken place but when they told her she, too, observed these various marks and results of physical violence. In the face of such evidence it is useless to contend that plaintiff's evidence has insufficient probative value to support her pleaded cause of action. Stress is laid on the facts that plaintiff did not attempt to escape from the buggy and did not raise an outcry sufficient to alarm the farmers living near the road and to attract the attention of a horseman who overtook and passed them. Plaintiff states that repeatedly defendant attempted to force her to leave the buggy but she soon discovered that she was safer there than she would have been in the road. She states that she did scream but that defendant drove furiously past farm houses which were infrequent. It was past midnight and defendant, against her protest, chose a lonely road instead of that usually

traveled and of the incident of the passing horseman, plaintiff states that he galloped by at a time when she was almost overcome by exhaustion, and was being held in a position that prevented her from crying out.

The cases in this State where the failure of the woman to cry aloud has been used with telling effect against her are instances (e. g., Champagne v. Hamey, 189 Mo. 709) where she has submitted in silence to sexual intercourse when she knew that an outcry would bring immediate assistance. In the present case there was no ravishment. Plaintiff was compelled to fight to save her honor and fought successfully. Her torn clothes and wounded body show that it was no sham battle and if it might be said that she could have obtained relief by screaming and crying, it was for the jury to say whether or not the course she followed was consistent with virtuous motives and impulses. [Linville v. Green, 125 Mo. App. 289.]

We find no inconsistency in the evidence of plaintiff and hold that it does no violence to physical law and fact. The court did not err in sending the case to the jury.

At the request of plaintiff the court instructed the jury that if they believed ''from a preponderance of the evidence that on the night of July 4, 1912, while the plaintiff was riding in a buggy with defendant, he took hold of plaintiff and against her will laid his hands upon her in a lustful way, without her consent and against her will, then your verdict must be for plaintiff.''

This instruction is not subject to the criticism that it singles out and emphasizes certain isolated evidentiary facts. ''The gravamen of the action is the assault and it was not necessary for plaintiff to prove the intent with which the assault was made in order to recover, although intent was alleged in the petition. The intent could only go to the question of damages.'' [Lemmons v. Robertson, 164 Mo. App. l. c. 89; Pierce

v. Carpenter, 65 Mo. App. 191; Luttermann v. Romey, 121 N. W. (Iowa) 1040.] In the case last cited it is said: "Any application of unlawful force to another constitutes an assault and battery. [Webb's Pollock on Torts, 247.] 'Every man is the sole custodian of his own physical person. No other has a right even to touch it unlicensed, and another wrongs him who does to him any physical violence, however slight,' and one who by force inflicts on the body of another 'the suffering or indignity of actual contact, however, slight, is liable to the other in damages.' [Bishop on Noncontract Law, secs. 189, 190.] The intent is immaterial, if the act is not justified or excusable, or with the assent of the person upon whom the act is committed. The only intent required to constitute an assault and battery is the intent to do the unlawful act. [Vosburg v. Putney, 80 Wis. 523, 50 N. W. 403, 14 L. R. A. 226, 27 Am. St. Rep. 47.] The allegation of the assault carries with it the allegation of illegality. [United States v. Lunt, 1 Spr. 311, 26 Fed. Cases, No. 15643.] While the injury must be intentionally inflicted, yet, if inflicted by violence, the law presumes a wrongful intent, and it rests with the person inflicting the injury to show the innocence of the intent."

The intent of defendant to have sexual intercourse with plaintiff was not an essential element of the assault and battery. If against her will and consent he subjected her to violent and lustful physical contact, he was guilty of assault and battery for which she may recover damages. The instruction contains the necessary ingredients of her pleaded cause of action and was properly given.

Other rulings of the court on instructions of which complaint is made we find were proper and we see no ground for the contention that the verdict was excessive. The case was fairly tried and the judgment is affirmed. All concur.