EMMA LEMMONS, Respondent, v. WILLIAM ROBERTSON, Appellant.

Kansas City Court of Appeals, May 27, 1912.

1. **ASSAULT: Intent: Pleading: Question for Jury.** In an action for damages for assault, proof that defendant broke into plaintiff's house in the nighttime and placed his hands on her person while she was asleep, is sufficient to authorize a recovery, and it was not necessary to prove the assault was committed with intent to have carnal intercourse, although the petition so alleged.

2. ————: **Remarks of Counsel: Bill of Exception.** Objections to remarks of counsel in the argument to the jury cannot be made a part of the record by affidavits of persons, who heard the argument, in support of a motion for a new trial. The bill of exceptions must recite what occurred as the trial progressed.

Appeal from Worth Circuit Court.—*Hon. William C. Ellison,* Judge.

AFFIRMED.

*O. B. Hudson* and *Kelso & Kelso* for appellant.

*L. M. Phipps* and *John Ewing* for respondent.

BROADDUS, P. J.—This is an action for assault. The complaint is to the effect that the defendant broke into the plaintiff's house at night and assaulted her for the purpose of illicit intercourse. The plaintiff is a widow living on a farm in Worth county in the vicinity of the town of Denver. The assault is alleged to have been made in April, 1910. Her family, besides herself, consisted of her father-in-law and five children.

Plaintiff testified that about eight o'clock on the night in question the defendant came to her house and remained talking with the family until the children got sleepy and wanted to go to bed, when she told defendant it was getting late and that she also wanted to go to bed, when he said he would go home; that "He wanted to know if I wouldn't marry him. Then he wanted to know if I wouldn't accommodate him that night. I told him I didn't have to disgrace myself and family that way. He then said he would go home, —started home. I fastened the door and went to bed. One of my children was sick. I turned the light down, went off to sleep, was awakened up in the night seeing something was wrong—some bad odor of some kind under my nose. I waked up then in a fright and smelled it, and says, 'O my God! who is this!' He says, 'It's me,' in a low voice; and I asked him what he was doing there and how he got in. He says, 'I got in;' and I says, 'You get out of here.' By that time my boy began to raise up and he went out." She stated that he had one hand on her shoulder and something under her nose of bad odor of some kind—she thought chloroform. The time was about two o'clock; and that the assault made her very weak, sick and nervous, which bothered her all summer. She stated that she saw defendant next day at Denver in Charley Wilson's store, when he came up to her and offered her three dollars in money if she would keep her mouth

shut; that she told him she didn't want his money, and that this trouble was not settled yet.

The son Lester, who was sleeping in the same room with plaintiff, testified, that he had gone to sleep before defendant had left the house, but was awakened in the night by the scream of his mother; that he got up and fastened the door when the defendant left. It was shown by plaintiff's evidence that the door had been fastened by a button and there was evidence explaining how defendant could have gotten into the house by reaching in with a stick through a broken pane in a near-by window. The son corroborates his mother as to what occurred at Wilson's store, and as to the effect the assault had upon her health. Plaintiff proved a good reputation for chastity.

The plaintiff testified that on the day after the assault she consulted with Wm. Miller, a lawyer, in reference to the matter, but did not mention the name of her assailant. Mr. Miller appeared as one of defendant's counsel at the trial.

Defendant in his statements admitted that he was paying his addresses to plaintiff, but denies that he made the alleged assault, or that he offered plaintiff money to remain silent. Other evidence on behalf of defendant tended to show that plaintiff was friendly with him at Wilson's store the next day, and that she and her son stayed all night at defendant's house after the alleged assault. The plaintiff and son both testified that it was before the alleged assault that they stayed at defendant's house all night. The burden of defendant's evidence was to discredit plaintiff in every important particular.

The jury returned a verdict for $400 actual and $500 punitive damages. From the judgment defendant appealed.

The contention of appellant is that the court erred in not directing a finding in his behalf; that the court committed error in giving and refusing instructions;

and in refusing to reprimand Mr. Ewing, plaintiff's attorney, for certain allusions he made in closing the argument as to the conduct of Wm. Miller, one of defendant's counsel. The appellant treats the action of the court in failing to direct a verdict for defendant as of the most importance. It is not contended that there was no evidence sustaining plaintiff's case, but that it was improbable and shown to be wholly unworthy of credit. The same argument, we presume, was presented to the trial court on the hearing of the motion for a new trial.

This cause was tried before a judge whose experience and ability rendered him highly competent to pass upon the credibility of witnesses. He saw them while on the stand and noted their behavior and their manner of testifying. If their evidence was as the appellant asserts it to have been we feel certain the court would have set aside the verdict and granted a new trial. But as the court refused the motion, we are satisfied that the judge was of the opinion that the matter was one for the jury. In this opinion we coincide. If plaintiff and her son told the truth she was entitled to a verdict. The jury held that they did. There was only one authority under the law to decide the question and that was the jury, subject to revision by the judge.

We do not find any fault with the instructions given for plaintiff, and those offered by defendant and rejected by the court were properly rejected, especcially instruction 3, which reads as follows: "The court instructs the jury that the burden is on the plaintiff to show by a preponderance of the evidence that the defendant did at or about the time alleged in her petition, assault her with the intent to have carnal intercourse with her, and without her consent; and unless they believe from a preponderance of all the facts and circumstances in evidence in this case, that the defendant did assault the plaintiff with the intent

to have carnal intercourse with her by unlawfully placing his hands upon her while she was in her bed, at her home, in the nighttime, then their verdict should be for the defendant. By the preponderance of the evidence is meant by the greater weight of the testimony in the case, and unless she has so satisfied the jury then they must find for the defendant.'' The fault of the instruction is that it requires the jury to find that the assault was made upon the part of defendant with the intent to have sexual intercourse with plaintiff. The gravamen of the charge is the assault, and it was not necessary for plaintiff to prove the intent with which the assault was made in order to recover, although intent was alleged in the petition. The intent could only go to the question of damages. Proof that defendant broke into her house in the night time and placed his hands on plaintiff's person while she was asleep was sufficient to authorize a recovery under the petition. The plaintiff, having proved enough as a basis to recover, was not required to prove more, although more was alleged.

Instruction 4 refused by the court was properly refused as its purpose was to exclude certain evidence testified to by plaintiff and her son.

It is urged that the verdict was to a great extent the result of prejudice caused by the remarks of Mr. Ewing, plaintiff's counsel, while closing the argument. It seems that the plaintiff's counsel commented on the fact that Mr. Wm. Miller, the lawyer with whom plaintiff consulted, as stated, after the alleged assault was representing defendant, and by his remarks, it is asserted, in some way prejudiced the minds of the jury against defendant. It is not necessary to go into detail as to what was said by Mr. Ewing. The matter is attempted to be made a part of the record by the affidavits of persons as to what Mr. Ewing said in his argument; what defendant's counsel said and what the court said. That was not the way to get the matter

into the record. The bill of exceptions must recite what occurred during the trial as the trial progressed. Such matters cannot be made a part of the record by affidavits in support of a motion for a new trial. Finding no error of record the cause is affirmed. All concur.