Marts v. Powell.

## COLUMBIA MARTS, Respondent, v. W. H. POWELL, Appellant.

Springfield Court of Appeals, December 11, 1913.

1. ASSAULT: With Intent to Commit Rape: Gravamen: Pleading: Proof. Petition predicated plaintiff's cause of action for damages upon an assault with intent to commit rape. The evidence merely tended to show a simple assault. *Held*, an immaterial variance, as the gravamen of the charge was the assault, and the intent with which it was committed need not be proven, though alleged.

2. ———: With Intent to Commit Rape: Evidence Reviewed: Demurrer Properly Overruled. In an action for assault with intent to commit rape, evidence for plaintiff examined and reviewed. *Held*, that trial court committed no error in submitting the case to the jury.

3. INSTRUCTIONS: Peremptory: Evidence: Considered Most Favorably for Opponent. The court considers the evidence in the light most favorable to plaintiff when determining the propriety of giving defendant's peremptory instruction.

4. VERDICT: Fairly Supported by Evidence: Will not be Disturbed by Appellate Court. A verdict will not be disturbed on appeal if there is any evidence tending fairly to support it, even though the reviewing court on the same evidence would have found a different verdict and though such verdict seems to be against the preponderance of the evidence.

5. APPELLATE PRACTICE: Improper Question: When not Prejudicial Error. An objection to an improper question was sustained and the question was not answered. But it was not requested that a reprimand be given because of the question nor was it asked that the jury be discharged. The matter was not mentioned in a motion for a new trial. *Held*, that prejudicial error could not be predicated thereon.

6. ———: Presumptions: Favoring Trial Court: Burden on Appellant to Show Error. A trial court is presumed to have discharged its duty and the burden is upon the appellant to show by the record that prejudicial error was committed.

7. COURTS: Duty of Trial Court: of Appellate Court. To weigh the evidence is the function of the trial court. To examine the record and ascertain if there be any substantial evidence to support the verdict is the function of the appellate court.

Appeal from Phelps County Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*Lorts & Breuer* for appellant.

(1)   A plaintiff cannot declare upon one cause of action and recover upon another, and the allegation and proof must substantially correspond.   Jones .v. Lauderman, 39 Mo. 287; Ischer v. St. Louis Co., 95 Mo. 261; Ingwerson v. Railroad, 205 Mo. 328; Litton v. Railroad, 111 Mo. App. 140; McMaster v. Railroad, 122 Mo. App. 313; Linville v. Green, 125 Mo. App. 297; Clements v. Yeats, 69 Mo. 623; Field v. Railroad, 76 Mo. 614; Stix v. Matthews, 75 Mo. 96; Whipple v. Peter Cooper, etc. 55 Mo. App. 554; Johnson, etc., v. Central Bank, 116 Mo. 558; Haynes v. Trenton, 108 Mo. 130; McCormick v. Railroad, 154 Mo. 202.   (2)   The verdict is against the weight of the evidence, and the court should have given defendant's instruction in the nature of a demurrer.   State v. Burgdorf, 53 Mo. 65; State v. Wilson, 91 Mo. 410; State v. Witten, 100 Mo. 525; State v. Patrick, 107 Mo. 147; Chapman v. Haney, 189 Mo. 709; State v. Huff, 161 Mo. 459.   (3)   The question propounded to plaintiff as to her father's Masonic connections was highly improper, and decidedly prejudcial to appellant.   And even though the objection to this evidence was sustained, the poison was there, and not cured by the ruling of the court. Gibson v. Zeibrig, 24 Mo. App. 65; Fathman v. Tumility, 34 Mo. ,App. 236; Beck v. Railroad, 129 Mo. App. 23; Harper v. Telegraph Co., 92 Mo. App. 313; Bragg v. Railroad, 192 Mo. 366; Wojtylak v. Coal Co., 188 Mo. 285.

*J. A. Watson, J. J. Crites* and *G. W. Vanwormer* for respondent.

(1)   The action recovered upon was not a change from the one declared upon.   Booher v. Trainer, 157

S. W. 848; Lemmons v. Robertson, 164 Mo. App. 89; Pierce v. Carpenter, 65 Mo. App. 191; Luttermann v. Romey, 143 Iowa, 233; Webb's Pollock on Torts, 247; Bishop on Noncontract Law, secs. 189, 190; Vosburg v. Putney, 80 Wis. 523; United States v. Lunt, 311 Fed. Cas. 15, 643. (2) The testimony amply supports the verdict. Booher v. Trainer, 157 S. W. 848, and cases cited. (3) The question propounded to respondent as to whether or not her father was a member of the Masonic Lodge, could not have been prejudicial to appellant for the reason that the court sustained an objection thereto, and consequently if there had been members of that order on the jury, they could not have learned from this question whether respondent's father belonged to the Masonic Lodge.

FARRINGTON, J.—Plaintiff, Columbia Marts, sued for $10,000 actual damages and $5000 punitive damages, alleging that defendant "unlawfully, feloniously, brutishly and violently assaulted" her "with the intent then and there forcibly and against her will feloniously to ravish and carnally know; that by reason of such assault the plaintiff was greatly frightened, humiliated and injured, and caused to suffer great mental anguish and disgrace," etc. The answer was a general denial. Upon trial by jury, plaintiff was awarded as her actual damages the sum of $750, punitive damages being expressly disallowed in the verdict.

The defendant upon this appeal urges three assignments of error, which we will pass upon in the order presented.

I. The first is concluded against him by the late decision of the Kansas City Court of Appeals in the case of Booher v. Trainer, 157 S. W. 848. To elucidate: Appellant complains that plaintiff's petition predicated her cause of action for damages upon an as-

sault with intent to rape, whereas her evidence merely
tended to establish a common or simple assault, and
that the rule that a plaintiff cannot declare upon one
cause of action and recover upon another has not been
changed by the practice act—that the allegations and
proof must substantially correspond. Conceding, for
a moment, that plaintiff's evidence merely tended to
establish a common or simple assault, respondent's
counsel quote from the decision in the Booher case:
"The gravamen of the charge is the assault, and it
was not necessary for the plaintiff to prove the intent
with which the assault was made in order to recover,
*although intent was alleged in the petition,*" as in
the case before us. (Italics ours.) Approving as we
do that part of the Booher case, no argument need be
advanced in this opinion and that case may be exam-
ined for reasons and authorities. [See, also, Lem-
mons v. Robertson, 164 Mo. App. l. c. 89, 148 S. W.
189.] In justice to appellant's counsel it may be said
that at the oral argument they frankly admitted that
the Booher decision overruled their contention.

II. Appellant insists that "the verdict in this
case is against the weight of the evidence, and the
court should have given defendant's instruction in the
nature of a demurrer." At the close of all the evi-
dence the defendant requested an instruction embody-
ing this idea and the question is squarely put for our
consideration.

The statement of the facts in this case, as contain-
ed in appellant's brief, is as follows:

"The plaintiff in this case is a young woman, liv-
ing with her parents in the city of St. James, Mis-
souri, where she was employed as a night operator
in the St. James telephone exchange and had been for
something like a year previous to her alleged diffi-
culty with the defendant.

"The defendant is a business man residing also in St. James, where he has lived for many years, and is engaged in the lumber business there, operating a lumberyard also at Salem, Missouri.

"The evidence showed that it had been his custom to make frequent calls at the central telephone office, where plaintiff worked, for the purpose of talking over the telephone to out-of-town parties, and particularly to parties in charge of his lumberyard.

"On July 23, 1912, the date of the alleged difficulty, defendant went to the central telephone office, by appointment, between 7:00 and 7:30 o'clock, to talk over the long distance, as was his custom. After answering his call, plaintiff and defendant became engaged in conversation of an affectionate character. The plaintiff did not know just how it started, 'but anyway she said something about the boys, and he asked her if she didn't have a smile for him,' to which she replied that she had not. And he told her then that he was coming back later that night. About 9:00 that night defendant did go back to the office, and what happened on his arrival is best told by the plaintiff, as follows: 'Q. Now state to the jury just what he did, will you? A. Well, he come in—. Q. Tell them in your own way. A. It was about 9:00 o'clock, and after time to lock the door, and he turned out the lights, and by that time I was up from the chair, and he grabbed me and held me so tight that I could not breathe, and he tried to throw me on the couch and pull up my clothes, and I got loose from him and opened the door and told him to go, and he said he didn't intend to get me in any bad shape, because I knew he was married and I was single, and I told him to go, and he went.'

"Before going, however, defendant gave plaintiff one dollar which she accepted and retained, so she told her mother, and the plaintiff herself admitted

that she got the dollar and spent it, but said defendant left it on the floor.

"Plaintiff testified that the defendant did not tear her clothing in any way or even disorder it, but said, 'He just wrinkled my dress, it was white.'

"The telephone office is situated in a building on a corner with a street on two sides, and in the heart of the city. The building itself is occupied on the first floor by the Bank of St. James and Mr. Laun's store, which is always open long after the hour of this alleged assault, and a barber shop. The telephone office is situated on the second floor, where Mr. Laun had his dwelling rooms, and which were occupied at this time by Mr. Laun's family, consisting of his wife, a grown daughter and two grown sons, and one room which has a door opening into the telephone office was at the time occupied by two young men who were visiting Mr. Laun. The evidence tended to show that these people were in their rooms at the time. Any ordinary conversation in the telephone office could be heard in the living rooms of Mr. Laun, and any noise louder than ordinary could be heard in his store downstairs.

"Plaintiff gave no alarm whatever, and made no outcry. She went on with her duties until next morning, went home, and her mother said she could see no change in her whatever. She continued to be friendly with the defendant and always spoke to him friendly when she met him on the streets and 'talked to him just like she did to any other man' and went to his office on one occasion with another operator.

"The alleged difficulty occurred on July 23d, but she told her father and mother nothing of it until December 20th, approximately five months, giving as her excuse for not telling them that she was ashamed to do so.

"After the difficulty, and long before she told her father and mother, she told Richard Kalb, Harry

Greble and Willie James, three young men with whom she kept company, all about her difficulty with the defendant.''

This is a well-prepared statement of the case from appellant's viewpoint. The facts and circumstances are presented to us, as they were to the jury, in a way calculated to discredit the plaintiff's story. This statement is an accusation—either that plaintiff's testimony that defendant assaulted her is wholly untrue, or that she sold her virtue for the dollar which she received and kept—and is therefore not such a statement as would be made by this court in determining whether the trial court erred in refusing to give defendant's peremptory instruction, because, upon such an issue, plaintiff would be entitled to a presentation of the evidence in the light most favorable to her. [Kendrick v. Harris, 171 Mo. App. 208, 213, 156 S. W. 490; Barr & Martin v. Johnson, 170 Mo. App. 394, 155 S. W. 459.] But taking the case as presented by appellant's counsel, is the trial court convicted of error in submitting the case to the jury? Defendant did not testify, choosing to stand on the general denial contained in his answer and the damaging circumstances brought out on cross-examination of plaintiff's witnesses. The jury, having the right to believe or disbelieve plaintiff's testimony (Bradford v. Railroad, 136 Mo. App. 709, 710, 119 S. W. 32), accepted it as true, and refused to construe the damaging circumstances as evidence that she was not in fact assaulted or that she voluntarily sold her virtue for the dollar which she received and kept. This was within the province of the jury. [Johnson County Savings Bank v. Mills, 143 Mo. App. 1. c. 269, 127 S. W. 425.] A verdict will not be disturbed on appeal if there is any evidence fairly tending to support it [Baker v. Thompson, 214 Mo. 1. c. 509, 114 S. W. 497) ; and where a verdict is supported by substantial evidence, it must stand, although the reviewing court would have found

a different verdict on the same evidence (Lehnick v. Street Ry. Co., 141 Mo. App. 158, 124 S. W. 542); or although it appears to be against the preponderance of the evidence (Crouch v. Colbert, 111 Mo. App. 93, 84 S. W. 992). These are established rules. There is ample evidence in this record to sustain the verdict and appellant's statement of the case bears out this assertion. As said in the Booher case, supra, although it was probable plaintiff could have obtained relief by screaming and crying, it was for the jury to say whether or not the course she pursued was consistent with virtuous motives and impulses. In the Booher case, the parties were together in a buggy on a country road, whereas in the case at bar, according to plaintiff's testimony as to what occurred, it is apparent that defendant was in her presence but a short time; in fact, she testified that she got loose from him and opened the door and told him to go and he went.

III. Grave prejudice is claimed to have arisen against appellant at the trial in the circuit court when plaintiff's attorney asked her this question on re-direct examination: "Now, Columbia, your father is a member of the Masonic Lodge, is he not?" Before an answer was given, defendant's counsel objected to the question and was sustained. There was no request for a reprimand and the next witness was called. There was no showing that plaintiff's father belonged to that lodge and no attempt to show that any member of the jury belonged to that lodge. It is a familiar principle that the burden is upon the appellant to show by the record that prejudicial error was committed, and that the trial court is presumed to have discharged its duty until the contrary is made to appear. [State v. Wilson, 161 Mo. App. 301, 143 S. W. 534.] Appellant may have been able to show that the asking of such a question absolutely destroyed his chance of securing impartial deliberation among the members of the jury, and the circumstances may have

been such that upon the asking of such a question the only course would have been to discharge the jury and begin anew. This record does not even reveal that appellant's counsel asked that opposing counsel be reprimanded, much less that the jury be discharged. Wherein, therefore, is error? This is a court of review. Yet appellant seriously argues for a reversal of this judgment upon a contention *not mentioned in his motion for a new trial.* If, by any process of reasoning, it could be said that error was committed by the trial court when it promptly complied with the only move the appellant made when the question was put, the error should have been pointed out in the motion for a new trial. [Street v. School District, 221 Mo. 663, 672, 120 S. W. 1159; Village of Koshkonong v. Boak, —— Mo. App. ——, 158 S. W. 874, 877.] This justifies the overruling of appellant's contention, made for the first time in this court. But it will not be amiss to say that appellant was as much responsible for the alleged error as was the respondent. The lodge matter was brought out for the first time by appellant's counsel on cross-examination of the respondent in an attempt to show that one Wills, a competitor of the appellant in the lumber business at St. James, urged respondent to bring this action, and respondent, in answer to a question as to what Wills was talking to respondent's father about, said it was about lodge matters. This opened the door for the appellant to show that the conversation *was* about lodge matters and not about the trouble out of which this litigation arose. It is true that counsel for respondent should have put the question in a more general way—without specifying which lodge or secret order was referred to—but the matter had been put in such condition by appellant's cross-examination of the respondent that, were the question properly before us, we would have to say that reversible error was not committed.

We are convinced that under the rules of law this judgment cannot be disturbed. Nevertheless, we entertain grave doubt whether justice has been accomplished. The plaintiff's narrative of the alleged occurrence does not impress us favorably. The fact that she retained and spent the dollar which she admits defendant left with her—the fact that she made no outcry, although surrounded by persons in close proximity—the fact that she had "23" engraved on a ring soon after July 23d when the assault is claimed to have occurred and gave no explanation except that it was just an idea of her own—the fact that she made no disclosure of the occurrence to her mother and father until nearly five months had expired—the fact that she had been in defendant's presence at numerous times between the date of the alleged assault and the date when she told her parents of it and spoke to him on the street and went to his office at one time with another operator and treated him just as she did any other man that came to the telephone office—the fact that she did tell three young men, with whom she was keeping company, of the occurrence—would indicate, at least, that her mental anguish was not as great as the jury viewed it. Her explanation of why she did not inform her parents of the assault, i. e., that she was ashamed of it, is refuted by the fact that she told three young men about it. As stated, all these facts and circumstances are merely damaging to plaintiff's case *before the jury,* and were disregarded by the jury and a verdict found on her testimony favorable to her theory of the trouble. As said in the Booher and in the Lehnick case, we are not sitting as triers of the fact where we might decide a case differently from the verdict rendered by the jury. It is our function to examine the record and ascertain if there is any substantial evidence to support the verdict, and in this case we have found that there is. The weighing of the evidence occurred in the trial court. Where there is evi-

dence and strong and reasonable inferences to be drawn therefrom which tend to discredit the verdict, but there is sufficient evidence to uphold the refusal of a new trial, the trial court is at full liberty to exercise its discretion in either granting or refusing a new trial. [Karnes v. Win, 126 Mo. App. 712, 105 S. W. 1098.]    Section 2022, Revised Statutes 1909, vests large discretion in the trial judge in the granting or refusal of a new trial, and it is as much his obligation to discharge his duties under that power as it is to rule on objections to evidence and requests for instructions.

The judgment is affirmed. *Sturgis*, J., concurs. *Robertson, P. J.*, concurs in all except the next preceding paragraph as to which he expresses no opinion.