BURREL COLLINS BROKERAGE COMPANY, Appellant, v. W. D. HINES, as Director General of the MISSOURI PACIFIC RAILROAD COMPANY, Respondent.

Kansas City Court of Appeals, March 7, 1921.

1. **CARRIERS**: Conversion: Evidence Sufficient to Show Order for Diversion of Shipment was Received and Accepted. In an action against a connecting carrier for conversion of a carload of apples it is *held* that the order for the diversion of the shipment was received and accepted by the defendant.

2. **TRIAL PRACTICE**: Jury Disregarding Instructions: A Verdict Contrary to Instructions is Against the Law. Where the evidence is undisputed that connecting carrier after accepting shipment refused to ship as directed by consignee and that an embargo on such shipment had been in effect about a month prior to acceptance of said diversion order, and consignee had not been notified of the same at the time the shipment was delivered for transportation and the jury was instructed that defendant was liable, unless it was prevented from transporting by an embargo placed subsequent to acceptance of shipment, and that if embargo had been in existence for sufficient length of time for defendant to know thereof after acceptance of shipment it was no defense unless plaintiff was notified thereof, the jury in returning a verdict for defendant disregarded the law as given by the court.

3. ———: NEW TRIAL. Where Jury Disregards Instructions New Trial will be Granted. A jury will not be permitted to disregard the instructions of the court, and itself ascertain the law, and when it returns a verdict contrary thereto, a new trial will be granted.

Appeal from the Circuit Court of Jackson County.—
*Hon. O. A. Lucas,* Judge.

REVERSED AND REMANDED.

*Lebrecht, Kaspar & Barber* for appellant.

*Edw. J. White, Thos. Hackney* and *Leslie Welch* for respondent.

ARNOLD, J.—This is an action in conversion. The petition was filed in two counts, the first being based on an action in conversion and the second on an action in tort for damages, both counts covering the same transaction. At the close of plaintiff's evidence, the second count was dismissed and the case proceeded on the first.

The action arises out of a shipment of a carload of apples originating at Attica, New York, and consigned to plaintiff at Kansas City, Missouri. The apples were shipped in bulk in a box car and were received at Kansas City and placed on the team tracks of the Missouri Pacific Railroad Company at the foot of Grand Avenue, on either the 15th or 16th of November, 1918, and consignee notified by the railroad company. The apples were inspected by plaintiff and found to be in good merchantable condition, as shown by the testimony of plaintiff.

On November 19, 1918, plaintiff ordered said shipment diverted to Solomon, Kansas, to move via the Union Pacific Railroad, a connecting carrier of the Missouri Pacific Ralroad at Kansas City. The diversion order was given to the Grand Avenue office of the Missouri Pacific, was received about 3:35 p. m. November

19th, and accepted by defendant's agents at that office. The defendant railroad company offered the shipment to the Union Pacific Railroad for transportation to Solomon, Kansas, but it was refused by the latter company because of an embargo (of which plaintiff had no notice) existing against the acceptance of perishable freight loaded in box cars.

An agent of the defendant railroad company, on November 22d, or 23, 1918, notified plaintiff of the refusal by the Union Pacific Railroad Company to accept the shipment by reason of said embargo, and suggested defendant's willingness to supply a refrigerator car for plaintiff's use in transferring the apples thereto from the box car in which they had been shipped; and defendant further advised that if plaintiff desired, defendant would execute the transfer of the apples at plaintiff's expense. Plaintiff refused to assume the expense of the transfer and stated that it would send a man to superintend the transfer. Defendant refused this offer.

On November 27, 1918, defendant company sold the apples, deducted the amount of freight charges due carrier for the transportation of the shipment from Attica, N. Y. to Kansas City, Missouri, and tendered the balance to plaintiff in full settlement, which tender was refused The apples were sold for $750, the charges against the shipment were $304.40, and the balance was the basis of the tender.

The petition, after alleging formal matters about which there is no dispute, charges that defendant accepted said diversion for the purpose of transporting said car to Solomon, Kansas, but that defendant, contrary to the rights of plaintiff, illegally and unlawfully converted said apples to its own use; and that said carload of apples was of the value of $1279.46, and prayed judgment therefor, together with interest and costs.

The answer was a general denial, and as a further defense avers that the carload of apples in question was

received at Kansas City on November 15, 1918, and set at the Grand Avenue Station team track of defendant company, the usual and customary place for unloading cars consigned to plaintiff, and plaintiff was so notified; that plaintiff did not unload said car but permitted it to remain on said track until November 19, 1918, when telephone directions were given by plaintiff to divert the shipment to Solomon, Kansas, over the Union Pacific Railroad; that the operators of defendant company attempted to comply with the instructions of plaintiff and promptly switched the said car to the tracks of the Union Pacific Railroad Company at Kansas City, Missouri, and tendered same to the operator thereof for transporation and delivery to Solomon, Kansas, but it was by them refused, for the reason that there was at the time in effect over the line of the Union Pacific Railroad Company an embargo against all perishable commodities not loaded in refrigerator cars, and avers that said apples were not loaded in a refrigerator car.

Further answering defendant states that on Nov. 21, 1918 and again on November 22, 1918, plaintiff was notified by defendant that said shipment had been tendered the connecting carrier and been refused on account of said embargo, and that thereupon defendant tendered possession of said car to plaintiff, and that it was subject to plaintiff's disposition; that defendant would furnish plaintiff a refrigerator car for transfer of the apples by plaintiff; or defendant would transfer them at plaintiff's expense; and avers that plaintiff wrongfully refused to accept and transfer the contents of the car and refused to dispose of the contents thereof.

Defendant further says there was at the time a tariff in force and effect duly filed, published and approved by the Interstate Commerce Commission, applicable to the lines of the Missouri Pacific Railroad Company and the operation thereof, known and designated as Tariff Item No. 435, p. 32, Joint Circular 114E, providing: "Orders for diversion or reconsignment

,will not be accepted under these rules at or near a station or to a point of delivery against which an embargo is in effect.'' That such refusal of plaintiff and its insistence that the said car be diverted was in violation of said Interstate Commerce Tariff; that on November 26, 1918, defendant notified plaintiff that the contents of said car would be sold at public auction on Nov. 27, 1918, and that the contents were so sold on the advertised date to the highest bidder for $750; that the embargo of the Union Pacific Railroad was unknown to the agent of defendant to whom plaintiff directed said car to be diverted, and that neither this agent nor any other agent of defendant had authority to waive the provisions of the said embargo.

Plaintiff's reply thereto is a general denial.

The trial resulted in a verdict for defendant and plaintiff appeals. Plaintiff duly filed its motion for a new trial, alleging (1) the verdict of the jury is contrary to law and (2) the verdict is not supported by the evidence, which motion was overruled by the court.

Plaintiff in its assignment of errors includes, with others, the two objections above referred to, and contends that the verdict or the jury is against the law as declared by the court in instruction ''A'' given in behalf of plaintiff; that said instruction correctly declared the law, and that the verdict was contrary to the facts presented at the trial.

Instruction ''A'' above referred to is, in effect, as follows: (1) The jury is instructed that if the defendant accepted from the plaintiff the shipment of apples for transportation to Solomon, Kans., that it then and there became its duty to transport said apples to destination. (2) If the jury find that after accepting said shipment for transportation, defendant refused to transport said apples as agreed, but held same in its possession at Kansas City, Missouri, and thereafter sold same without permission from plaintiff, contrary to shipping instructions, the defendant was guilty of conversion of

206 M. A.—43

said apples at the time it refused to transport the same, unless the jury find it was prevented from transporting said apples to destination by an embargo placed subsequent to the acceptance of the shipment, and further that if the embargo was in existence at the time shipment was accepted and had been for sufficient length of time for defendant to know of its existence by the exercise of ordinary care, then the embargo was no defense unless the plaintiff had been notified of same at the time the shipment was delivered for transportation.

The testimony shows that the order to divert the shipment was given by plaintiff to defendant on November 19, 1918, about 3:35 p. m., and was received and accepted by defendant.

One J. W. Brown, a witness for defendant, testified that he was a team track man in the employ of defendant company at the Grand Avenue station and that his duties were to help out Mr. E. H. Hinson, the cashier of the defendant company at that station; that he sometimes received and wrote down telephone orders transmitted to said office; that he received the diversion order in question by telephone from Mr. Burrel Collins, and identified the order; that he wrote down only what Mr. Collins told him over the telephone.

E. H. Hinson, another witness for defendant, testified that he was in the employ of defendant company at Grand Avenue station, and that Brown was employed there, and in the absence of Hinson, took care of the office and received shipping orders and freight for transportation, just the same as he, Hinson, would if he were there.

It must be concluded therefore that the order for the diversion of the shipment of apples in question was received and accepted by defendant company for shipment to Solomon, Kansas. The testimony is undisputed that defendant company, after accepting the shipment, refused to ship the apples to Solomon, Kansas, as directed in the order; and that the embargo on such shipment

was not placed subsequent to the acceptance of the order for diversion; but that the embargo was in existence and had been in effect for about one month prior to the acceptance of the diversion order aforesaid, and that plaintiff had not been notified of the same at the time the shipment was delivered for transportation. It is therefore the opinion of the court that the jury disregarded the law as the court gave it in returning a verdict for defendant. The jury is bound to take the law from the court and when the law is announced by the court it is the law of the case until overruled by a higher authority.

It naturally follows that a verdict in direct conflict with the law as laid down by the court is against the law So far as the jury is concerned, there is no such thing as the charge by the court being contrary to law because whatever his charge may be it is the law to them. The jury can no more be permitted to disregard the instructions of the court and itself ascertain the law than it would be permitted to go outside the evidence to find the facts. Such a course would destroy our system of keeping separate and distinct the powers of courts and juries and would work confusion in the administration of the law.

In Wallace v. Weaver, 133 Pac. 1099 (Mont.) HALLOWAY, J., says of this rule: "Any other rule than that announced above would confer upon the jurors in every instance the authority to determine the law of the case as well as the facts."

In Aultman v. Reame, 9 Nebr. 487, 4 N. W. 81, the court said: "Whether right or wrong, it was the duty of the jury to respect and obey the instructions." The same principle is discussed in Payne v. Railroad, 129 Mo. 1. c. 421, in which the court said: "The jury evidently disregarded the instructions and the trial court should have set aside the verdict for that reason if for no other." And again in Shohoney v. Railroad, 223 Mo. 1. c. 684, our Supreme Court has spoken: "It sometimes

happens that a trial judge is conscious that a cause on trial has drifted away from his control and is decided against his rulings, and when that is the case he has but one course of duty, that is, to set aside the verdict.'' [See also House v. Davis, 197 S. W. 693 (Ark.)]

In the present case the jury failed to follow the law as given by the court in plaintiff's instruction ''A,'' and for that reason plaintiff's motion for a new trial should have been sustained. Other questions raised need not be considered at this time. The judgment is reversed and the cause remanded. All concur.