VIOLETTE RANSOM, Appellee, v. A. J. McDERMOTT, Appellant.

No. 41517.

January 17, 1933.

Evans, J.—The assaults complained of are alleged to have occurred in June, in August, and on or about November 28th, all in the year 1930. The defendant was a resident of the town of Lohrville. He owned a farm a few miles from such town, which was occupied by his son as a tenant. Near this farm the plaintiff and her husband lived as tenants upon a small tract. The plaintiff's husband was engaged in the farming of such tract and in doing work for hire on neighboring farms. During the season of 1930 he had been employed for various jobs by the defendant. Ransom had no telephone. A visit to his home was therefore requisite in order to enable negotiations with him. Each of the assaults charged occurred at the Ransom home. On each occasion the defendant claims his errand at such home to be the employment of the husband to do some work. At the time of the assault, the plaintiff was pregnant.

Her child was born on December 19th. The testimony of the plaintiff in support of the first count of her petition is epitomized in appellant's brief as follows:

"The plaintiff claims that, on a washday in June, 1930, McDermott came to the home and inquired of her where Harold was. Harold was gone. The plaintiff says McDermott started to grin, and wanted to know how she was, and says, 'I would like to have you for my sweetie.' I said, 'My goodness, don't you know I am married?' He said: 'That doesn't make any difference. I am married, too.' Plaintiff claims McDermott walked up to her and put his hands on her arms. Plaintiff had a sleeveless everyday dress on, and backed away, and said he had better go. McDermott just kept coming toward her, getting hold of her wherever he could, and trying to put his hands down the front of her dress. They had a sort of a wrestle, and the plaintiff got away from him and out of the washhouse. McDermott then came out of the washhouse, and was told to go home, and not come back unless Harold was home."

Her testimony in support of the second count is epitomized likewise as follows:

"Plaintiff says: 'He came up back of me and put his arms clear around me, and I turned around, and here it was Mr. McDermott. So I pushed him away. He tried to pull my dress up. I was quite large and clumsy. I was pregnant. He then tried to put his hands down my dress. Succeeded in getting his hands down before I could wrestle and get away from him. I got over around the rinse water. He was still trying to hold me. I bent back over the rinse tub, got away from him finally, and got out of the wash house. I ran out in the yard. He said he wanted to have intercourse, and I said 'No.' I don't think that he knew that I was in the shape I was, because he didn't act as if he did.' Plaintiff told him if he did not stay away she would go and get someone to see that he did stay away, and said, 'I did not want to be bothered about it.' "

This is a sufficient indication of the nature of the testimony. All the foregoing testimony is vigorously denied by the defendant. The plaintiff has some corroboration to her testimony from the witness McCaulley, an attorney who represented the plaintiff and who sought an interview with the defendant for the purpose of adjustment. He testified to some admission on the part of the defendant.

Such admission had more particular reference to the alleged assault of November 28th. In support of plaintiff's claim as to this latter assault, she had also some corroboration in the testimony of her sister, who was said to be in an adjoining bedroom when the assault occurred, and overheard the language used by the defendant. If the testimony of the plaintiff is to be accepted as true, then the assaults were heinous. Indeed, the heinous character of the assault is what renders the testimony of the plaintiff almost incredible. The record contains one admission made by the defendant as a witness. He testified that on the November occasion he noticed a deformity of plaintiff's arm, and that he put his hand upon it and asked her what was the matter with it, or words to that effect; that she repelled his action, and ordered him to keep his hands off. In Count Two of his answer the defendant pleaded by way of mitigation, in sub-stance, that the character of the plaintiff was such that neither her character nor her feelings could be affected by such advances as were alleged by her.

■ One of the grounds relied on for a reversal is that the ver-dict lacked support in the evidence, and that it was the result of passion and prejudice on the part of the jury. The plaintiff was 27 years of age and the defendant was 80 years. The disparities of the case are great. The innate improbability of the truth of the charge has its appeal. We are of opinion, however, that the case made was a proper one for the jury. These parties had not known each other prior to 1930. There was a frequency in the appearance of the de-fendant at the home of the plaintiff that is not well explained. The plea in mitigation was two-edged. It was pleaded for the purpose of reducing damages. It necessarily weakened the force of the de-fendant's denial of guilt in any degree. It indicated the defendant's belief that the plaintiff was susceptible to the advances charged against him. On the whole record, therefore, we think the evidence was sufficient to go to the jury, and therefore sufficient to sustain an adverse verdict.

 II. The appellant complains because the amounts allowed under the separate counts were lumped, and because they failed to disclose what amount of damages was allowed under each count, if more than one. Under Section 11513, the defendant could have sub-mitted special interrogatories in writing, and could have required that they be submitted to the jury. Under the statute, it was requisite that such special interrogatories should be submitted to the adverse

598

attorneys before argument to the jury was commenced. The defendant did not avail himself of the provisions of this statute. He did submit to the court certain requested instructions, which embodied separate findings. He contends that these were the equivalent of requests for special interrogatories. If we should concede that a request for instructions might be deemed a request for special interrogatories, yet it remains that the defendant failed to submit such requested instructions to the adverse attorneys at any time. We must hold, therefore, that the defendant is in no position to complain on the ground here indicated.

 III. The appellant directs complaint against several instructions on the broad ground that they permit the jury to award actual damages as for physical pain and suffering, and that the evidence fails to show any such physical pain and suffering. The complaint is bottomed upon the thought that there can be no actual damages unless there be physical injury to some appreciable extent. In the first count of her petition the plaintiff charged an indecent assault only. She did not charge a battery. In her second and third counts she charged a battery, as well as an assault. In support of each count the plaintiff testified to her mental suffering. In support of her second and third counts she testified to physical pain and suffering, as well as mental. Though damage for mental pain and suffering resulting from indecent assault is somewhat intangible, and is not capable of specific measurement, yet the jury may award actual damages therefor in such sum as will fairly compensate the injured party. And this is so even though it does involve a broad and somewhat indefinite discretion of the jury. Nor is it true, as appellant contends, that actual damages must be confined to actual physical injuries. The attack of the defendant upon the instructions in this respect cannot be sustained.

 IV. Complaint is made of Instruction No. 6 given by the court. This was in part as follows:

"An 'assault and battery,' as the term is used in these instructions, may be the taking by a man of indecent liberties with the person of a woman, against her will. To constitute an assault and battery, the liberties taken must be such as the common sense of society would regard as indecent and improper; and the act of a man in handling or touching the person of a woman which is not in itself indecent in nature may be rendered so by the words and cir-

cumstances accompanying the act. If a man place his hands upon the person of a woman against her will, and accompany such act with a solicitation that she indulge in sexual intercourse with him, such act is the taking of indecent liberties with the person of such woman."

The particular objection urged in this instruction is the illustration used therein as descriptive of indecent liberty. The particular complaint is that such illustration should have been balanced by a *converse* one, as follows:

"That, if you find from the evidence that the defendant merely used persuasion and flattery, and without intent by his acts to use force against the plaintiff's will to induce the plaintiff to submit, such acts do not constitute an assault upon the plaintiff."

The plaintiff asked such modification of Instruction 6, in his requested instruction 1. It is sufficient here to say that the converse proposition submitted to the court by defendant was not an accurate one; nor was the court bound, as a matter of law, to submit the converse proposition.

V. It is earnestly contended that the verdict was excessive, both as to the actual damages and punitive damages. The argument upon this point is woven into the further argument that the evidence was not sufficient to sustain any verdict at all. The two questions are quite distinct, for the purpose of review here. The verdict awarded $1,500 as actual damages and $2,000 as exemplary or punitive damages. Whether the verdict was excessive is a question to be considered apart from that of guilt or innocence. Unless the defendant were found guilty, he could be subjected to no damages at all. He is found guilty. For the purpose of determining the amount of the verdict, it avails nothing to the defendant to argue that he was not guilty at all. For the purpose of determining whether the amount allowed was excessive, we must recognize the verity of defendant's guilt. His offense, then, was a heinous one. And this is so even though its larger purpose was frustrated. Under the record, there is nothing to be said in extenuation. The injury inflicted was deep and substantial. Moral turpitude and the malice of wantonness permeated it, and called for more than actual damages. The jury fixed the amount of actual and punitive damages in separate items. If they had merged these items into one, our difficulty would be

greater. We cannot say that the allowance of $2,000 as punitive damages was excessive. Whether the allowance of $1,500 actual damages is excessive is another question. In fixing the amount of punitive damages at $2,000, the jury exhausted its punitive power. It could not again allow punitive damages in the item of actual damages. With due regard to the discretion of the jury in fixing the amount of actual damages, without being bound by any particular data of computation, we think it must be said that the allowance of actual damages was excessive.

Unless the appellee shall elect to remit from the actual damages the sum of $1,000, a new trial will be ordered on this ground. Upon such election by appellee, the judgment below will be affirmed as thus modified; otherwise the judgment will be reversed and the cause remanded.—Affirmed on condition.

All the justices concur.