J. E. EDMISTEN, Plaintiff-Appellant,

v.

Ralph DOUSETTE and Hillary Dousette, Defendants-Respondents.

No. 7788.

Springfield Court of Appeals.

Missouri.

April 19, 1960.

Graves & Graves, Neosho, for plaintiff-appellant.

John D. Kelly, Seneca, for defendants-respondents.

STONE, Presiding Judge.

Intertwined in this hurrah's nest of litigation are (a) the claim of plaintiff, J. E. Edmisten, in the sum of $99.67 for old lumber from a razed barn which was furnished to defendants, Ralph A. and Hillary Dousette, who are husband and wife, and (b) defendants' counterclaim in two counts. In the *first* count, defendants charged that plaintiff "was indebted" to them (1) for four items having an aggregate "value" of $34.70 (including a linoleum floor cover at $9.60, sand and gravel at $7.10, paint and wallpaper at $15, and a toilet flange at $3), to which items we hereinafter refer collectively as *the repair items*, (2) for one pair of leather *work boots* valued at $7, (3) for three items having an aggregate "value" of $66.80 (including 50 bales of milo hay valued at $37.50, 43 shocks of sorgo valued at $25.80, and 100 pounds of mineral salt valued at $3.50), to which items we hereinafter refer collectively as *the feed items*, it being alleged that the repair items, the work boots and the feed items were "furnished to the plaintiff by defendants at the request of plaintiff," (4) "in the sum of $29.00, which sum was paid by the defendants for *electricity*, and which the plaintiff agreed to repay to defendants," and (5) for defendants' *labor* "of the reasonable value of $375" for a period of three months in feeding, tending and caring for plaintiff's livestock and in cultivating and planting "at the request of the plaintiff." The values assigned to the items in the first count aggregated *$512.50*, but the prayer of that count was for *$509.50*. (All emphasis herein is ours.) In the *second* count of their counterclaim, defendants pleaded an "indecent attack and assault" by plaintiff upon defendant Hillary, for which actual damages of $2,500 and punitive damages of $10,000 were sought. Out of the welter of charges and countercharges, affirmations and denials, laid in this nest of pleadings, the jury hatched a brood of three verdicts, to-wit, (1) for plaintiff in the sum of $50 upon his petition, (2) for defendants in the sum of $500 upon the first count of their counterclaim, and (3) for defendants in the sum of $250 upon second count. The judgment of $50 upon plaintiff's petition stands without complaint, but plaintiff has appealed from the judgments against him on both counts of the counterclaim.

The pertinent facts, pieced together around many blind spots in the record, follow. Plaintiff owned a farm (its location not fixed and its acreage not given), on which there was "a rock house" (its size and state of repair not disclosed). Desiring a tenant for his farm, plaintiff advertised "for a disabled veteran to work on the farm." Defendants (their ages and physical condition not shown) answered the advertisement and shortly moved onto the farm. According to plaintiff, defendants read the written contract (not identified or offered in evidence) between plaintiff and a former tenant and then agreed "our deal would be on those terms too * * * well, maybe not word for word, but our deal would be based on that contract." Defendants' version of their loose understanding with plaintiff (which we hereinafter dignify by referring to it as *"the original agreement"*) is exemplified by defendant

Ralph's running recital that "he (plaintiff) was to sell (his) Black Angus cows, machinery, sheep, and supposed to buy me (Ralph) from ten to fifteen head of milk cows to make a living with, and the milk check was to be mine and any increase of sheep or cattle and of crops was supposed to go to him, and anything he might spend would come out, and anything left over would be paid on the principal, and the whole principal, not including the milk cows, totaled up around $16,000." Attempting oversimplification of the original agreement, defendants' counsel writes that, "as nearly as it may be interpreted from the testimony," it was "that defendants were to purchase, by their labor, the livestock and machinery owned by plaintiff." Whatever the original agreement may have been, it was entirely oral although one of the few points upon which the parties were in complete accord at the trial was that the original agreement was to have been reduced to writing. Quickly adverting to their adversary stations, plaintiff charged that defendants repeatedly refused to accompany him to the office of his attorney in Carthage "to sign the written contract," while defendants insisted that they expectantly waited for plaintiff "to produce" a written contract but that he never did so. In any event, no written contract was executed—"it was all just talk."

Defendants' position has been, and still is, that plaintiff breached the original agreement by failing to furnish defendants with "ten to fifteen head of milk cows to make a living with" and by failing to enter into a written contract, all of which was "supposed to be taken care of before the first of the year" of 1958. On appeal, defendants' counsel also suggests that the original agreement was breached by plaintiff's alleged indecent assault upon defendant Hillary on January 6, 1958. Passing the legal frailties of this novel but unpersuasive argument, it will suffice to point out that defendant Ralph insisted upon trial that, because of plaintiff's alleged failure to do what "he was supposed to do * * before the first of the year," the original agreement "did not extend over" and "meant nothing" after January 1, 1958.

Defendant Hillary said that the alleged indecent assault by plaintiff upon her person occurred while she was alone in her home on the morning of Monday, January 6, 1958. As described in her language, plaintiff "came over and put his * right hand on my hip and his other arm around my waist and shoulder and pushed the lower part of his body up against my body and held me there, and he said, 'I won't hurt you, girl.' I pushed away from him then and backed up toward the stove and laid my hand up there by the poker * * *, and he asked me if I would let him come to see me when I moved * * * and I said, 'I can see no reason for it.' Then he tried to change the subject, and I told him I wished he would leave. I was in a hysterical condition, and he did leave then." When defendant Ralph (then employed elsewhere) returned home that evening, Hillary told him "what had happened." Ralph moved his family off plaintiff's farm the following weekend. Both defendants readily admitted that they had presented no claim to plaintiff prior to his institution of suit on April 10, 1958, because, as Ralph said, "I was willing to let it lay, just let it go, until he brought suit against me, and then after that I was not willing to let it lay by no means." Furthermore, Ralph explained that he "didn't want to bring my wife into court"—"she is under the doctor's orders right now"—"she had been through enough, and I decided to just let it all go." Defendant Hillary observed tersely that, after the alleged assault upon her, "we wanted nothing more to do with him (plaintiff) in any way."

In the single point directed to the first count of the counterclaim, plaintiff-appellant asserts that the verdict for $500 on that count was "excessive in its entirety, because there was no evidence to

warrant such a finding and the verdict was clearly against the law and evidence"; and, in the single point directed to the second count, it is urged in similar vein that the verdict for $250 on that count was "excessive in nature and * * * was against the law and evidence." Assignments in a motion for new trial in a jury-tried case that verdicts are against the law and the evidence present nothing for consideration in the trial court and preserve nothing for appellate review,[1] and like points in an appellate brief in a jury-tried case are just as inadequate, ineffectual, futile and meaningless.[2] Furthermore, on the record before us, plaintiff is in no position to contend here that a submissible case was not made on either count of the counterclaim, for he did not move for a directed verdict on either count at the close of all of the evidence, made no objection to the giving or refusal of any instruction, and joined voluntarily in submission of the counterclaim. There are many holdings that, in such circumstances, the submissibility of a jury-tried case is not an open question on appeal.[3] Since there was no objection to any verdict-directing instruction[4] and since consideration of the submissibility of the counter-claim is neither invoked nor justified under Supreme Court Rule 3.27, 42 V.A.M.S. [see Millar v. Berg, Mo., 316 S.W.2d 499, 502–503(3)], we need not concern ourselves with submissibility. However, for reasons hereinafter discussed, we are constrained to agree with plaintiff that the verdict on the first count of the counter-claim was excessive.

█ The ten items listed in count one have been classified in defendants' brief (and we think properly so) in two broad categories thus defined in the language of defendants' counsel, i. e., (1) items "for which defendants would have been paid[5] except for the fact that plaintiff breached the (original agreement) * * * and rendered impossible further performance by defendants" and (2) "materials and commodities furnished to plaintiff by defendants upon plaintiff's assurance that he would reimburse defendants" therefor. In the *first* category, defendants' counsel has placed *the feed items* which (as hereinbefore listed in the first paragraph of this opinion) aggregate $66.80, the item of $29 for *electricity,* and defendants' *labor* "of the reasonable value of $375"; and, in the *second* category, *the repair items* aggregat-

1. Robbins v. Robbins, Mo., 328 S.W.2d 552, 555(6); Marsters v. Bray, Mo., 85 S.W.2d 479, 481(2); Greer v. Carpenter, 323 Mo. 878, 19 S.W.2d 1046, 1047; Muegler v. Crosthwait, Mo.App., 179 S.W.2d 761, 763(6).

2. Clay v. Owen, 338 Mo. 1061, 93 S.W.2d 914, 915(2); Matthews v. Karnes, 320 Mo. 962, 9 S.W.2d 628, 631(5); Federal Chemical Co. v. Farmers Produce Exchange, Mo.App., 123 S.W.2d 612, 615 (1); Martin v. Bulgin, Mo.App., 111 S.W. 2d 963, 964(1). See also Williamson v. Glessner, Mo.App., 249 S.W.2d 871, 874; Dean v. State Social Security Commission of Missouri, Mo.App., 123 S.W.2d 573, 574(1); Gilbert v. Malan, 231 Mo. App. 469, 100 S.W.2d 606, 612(1).

3. Ukman v. Hoover Motor Express Co., Mo., 269 S.W.2d 35, 36(1); Hauber v. Gentry, Mo., 215 S.W.2d 754, 759; Clay v. Owen, supra, 93 S.W.2d loc. cit. 916 (8); Harbison v. Chicago, R. I. & P. Ry.

Co., 327 Mo. 440, 37 S.W.2d 609, 614 (12), 79 A.L.R. 1; Marr v. Marr, Mo. App., 319 S.W.2d 920, 922; Lindsay v. McLaughlin, Mo.App., 311 S.W.2d 148, 149(2); Silberman v. Hicks, Mo.App., 231 S.W.2d 283, 285(3); Muegler v. Crosthwait, supra, 179 S.W.2d loc. cit. 763(5); Sullenger v. Towle, Mo.App., 91 S.W.2d 188, 190(1); Dusky v. Kansas City, 227 Mo.App. 849, 58 S.W.2d 768(2); Lintz v. Atlanta Life Ins. Co., 226 Mo.App. 1087, 49 S.W.2d 675, 677(6).

4. Ukman v. Hoover Motor Express Co., supra, 269 S.W.2d loc. cit. 36–37; Marr v. Marr, supra, 319 S.W.2d loc. cit. 922 (2); Lindsay v. McLaughlin, supra, 311 S.W.2d loc. cit. 150.

5. Of course, "payment" for these items would not have been in cash but in benefits accruing under the original agreement which (as interpreted by defendants' counsel) provided "that defendants were to purchase, by their labor, the livestock and machinery owned by plaintiff."

ing $34.70 and the item of $7 for *work boots*.

In our view of the case, proper disposition of the appeal as to the first count may be made without descending into interminable detail by discussion of each item. We think it apparent that, in the first count, defendants did not plead a cause of action for damages for breach of the original agreement; but, *even if* the first count, as drafted, would have permitted submission of defendants' present contention that plaintiff breached the original agreement and that, by reason of such breach, he should be held liable for the items in the *first* category, it is indisputably clear that the case was not submitted to the jury on any such theory. The *only* instruction on the first count was defendants' instruction 5 which directed a verdict for them upon findings "that the defendants provided *certain commodities and chattels* to the plaintiff, *upon the assurance of plaintiff that they would be repaid for the same,* as such *commodities and chattels* have been mentioned in evidence, and that the prices charged therefore (sic) by the defendants were the reasonable value thereof, and that all or any portion of the amount thereof has not been fully paid." "The reasonable value" of defendants' *labor* constituted the major portion of the sum sought and of the verdict returned, but certainly *labor* is not by any fair rule of construction within the ordinary and accepted meaning of *commodities and chattels*.[6] And, there was no "assurance of plaintiff that (defendants) would be repaid" for anything other than the items in the *second* category, to-wit, (a) the pair of *work boots* purchased for

plaintiff (so defendants said) at his specific request and (b) *the repair items* for which defendants sought to charge plaintiff on the "assurance" of reimbursement couched in this language by defendant Ralph, "He (plaintiff) told us to get anything for *small repairs* that was needed around there and that he would give us our money back, and that is the reason that I went and got those things."

▮ Without further probing the pleadings and the evidence, we believe the conclusion inescapable that, by their submission of the first count in instruction 5, defendants abandoned any claim for the items in the *first* category;[7] and, they may not here justify and sustain the verdict on the first count (which allowed practically complete recovery for all items in *both* categories) on a theory not submitted in the court nisi,[8] to-wit, that plaintiff was liable for the items in the *first* category by reason of his breach of the original agreement. With appropriate respect for the elementary yet basic precept that the jury is bound by the instructions of the court [Cunningham v. Thompson, Mo., 277 S.W.2d 602, 611(20); Burrel Collins Brokerage Co. v. Hines, 206 Mo.App. 669, 230 S.W. 371, 373], it must follow that instant defendants may not retain that portion of the verdict on the first count which is in excess of the maximum recovery permitted by and under instruction 5. Fager v. Commercial Union Assur. Co., 189 Mo.App. 464, 469, 176 S.W. 1064, 1065. Where, by failure to follow the instructions, a jury has returned a verdict for the wrong party [Schulte v. Crites, Mo. App., 318 S.W.2d 387, 390(3)] or in an

6. Consult State v. Henke, 19 Mo. 225; Harelson v. Tyler, 281 Mo. 383, 398, 219 S.W. 908, 913; State v. Duluth Board of Trade, 107 Minn. 506, 121 N.W. 395, 412, 23 L.R.A.,N.S., 1260; Rohlf v. Kasemeier, 140 Iowa 182, 118 N.W. 276, 278, 23 L.R.A.,N.S., 1284; Carlton v. Manuel, 64 Nev. 570, 187 P.2d 558, 562.

7. Compare Salmons v. Dun & Bradstreet, 349 Mo. 498, 162 S.W.2d 245, 252(4), 141 A.L.R. 674; Parrish v. Hartman, Mo.

App., 235 S.W. 463(2). See Johnson v. Thompson, 241 Mo.App. 1008, 236 S.W.2d 1, 7(1).

8. Welch v. McNeely, Mo., 269 S.W.2d 871, 875(1-3); Pienieng v. Wells, Mo., 271 S.W. 62, 66(3); Hillin v. LaFayette Land & Farming Co., Mo.App., 296 S.W. 243, 245(12); State ex rel. Athletic Tea Co. v. Cameron, 216 Mo.App. 683, 273 S.W. 746, 748(7); Avery & Sons Plow Co. v. Farrar, Mo.App., 250 S.W. 926, 927(2).

amount clearly insufficient,[9] a retrial becomes necessary; but where, as here, the verdict is excessive in an amount ascertainable from the record, the error may be corrected by remittitur.[10] Under instruction 5 submitting defendants' right to recover vel non for *"commodities and chattels"* provided "upon the assurance of plaintiff that they would be repaid for the same," the maximum permissible verdict for defendants on the first count would have been in the sum of $41.70, the aggregate reasonable value (as shown in evidence) of the items in the *second* category. So, the verdict of $500 on the first count reflected the jury's failure or refusal to follow instruction 5 and was excessive to the extent that it went beyond $41.70, to-wit, in the sum of $458.30.

▮ With respect to the *second* count of the counterclaim which charged an indecent assault upon defendant Hillary, the position of plaintiff's counsel is that, although the evidence was "pro and con and conflicting," it was "not substantial" and there was "little, if any, evidence to show *actual* damage." We note preliminarily that, notwithstanding the fact that *actual* and *punitive* damages were pleaded in the second count and were submitted in the only verdict-directing instruction on this count, and notwithstanding the plain statutory mandate that "(w)hen exemplary or punitive damages are allowed by the jury, the amount thereof shall be separately stated in the verdict" [Section 510.270, 31 V.

A.M.S.], a general form of verdict was given to, and was returned by, the jury. Thus, "it is impossible to interpret the verdict with a degree of precision" [Jones v. Prudential Ins. Co. of America, 173 Mo. App. 1, 17, 155 S.W. 1106, 1110] and we cannot know what, if any, portion of the $250 was allowed as punitive damages. If timely and appropriate objection had been made and preserved [Dye v. Loewer, Mo. App., 94 S.W.2d 948, 953(12, 13)] or if the verdict were clearly unreasonable on the record presented [Hall v. Martindale, Mo. App., 138 S.W.2d 657, 660(1)], this error would require a retrial on the second count. However, we do not regard the verdict on this count as wholly unsupported by evidence or as clearly unreasonable in amount; and, no objection concerning the form of verdict having been made either in the trial court or on appeal, we shall not set aside the judgment on this count, sua sponte.[11]

▮ One who takes indecent liberty [i. e., liberty which "offends a reasonable sense of personal dignity" (Restatement of the Law of Torts, Vol. 1, § 19, p. 45; Harper and James, The Law of Torts, Vol. 1, § 3.2, p. 213), or which "the common sense of society would regard as indecent and improper" (Ransom v. McDermott, 215 Iowa 594, 246 N.W. 266, 268)] with the person of a female without her consent and against her will, even though with no intent to commit rape, is guilty of an indecent assault. 4 Am.Jur., Assault and Battery, § 27, p. 142. We have no doubt but that,

9. Akin v. Matthews, Mo.App., 50 S.W.2d 689, 691; Abbey v. Altheimer, 215 Mo. App. 1, 263 S.W. 471, 472–473(1); Barber v. McDonald, Mo.App., 245 S.W. 357; Wehringer v. Ahlemeyer, 23 Mo.App. 277, 281(2).

10. Fager v. Commercial Union Assur. Co., 189 Mo.App. 464, 469, 176 S.W. 1064, 1065; Roberts v. Atlas Life Ins. Co., 236 Mo.App. 1162, 163 S.W.2d 369, 374–375 (11); Kyle v. Fidelity & Casualty Co. of New York, 241 Mo.App. 513, 244 S.W.2d 418, 421(5); Wandell v. Ross, 241 Mo. App. 1189, 245 S.W.2d 689, 694(9, 10).

See also Hart-Bartlett-Sturtevant Grain Co. v. Aetna Ins. Co., 365 Mo. 1134, 293 S.W.2d 913, 926–927(11), certiorari denied 352 U.S. 1016, 77 S.Ct. 562, 1 L. Ed.2d 548; Hamilton v. Patton Creamery Co., 359 Mo. 526, 222 S.W.2d 713, 717(8)..

11. Jones v. Prudential Ins. Co. of America, 173 Mo.App. 1, 155 S.W. 1106, 1109–1110; Buchholz v. Metropolitan Life Ins. Co., 177 Mo.App. 683, 160 S.W. 573, 575 (4); Baker v. Atkins, Mo.App., 258 S.W. 2d 16, 23(21). Consult also Pleiman v. Belew, 360 Mo. 219, 227 S.W.2d 733, 735 (4), and Kansas City v. Thomson, Mo., 208 S.W.2d 216, 217–218(1).

if described accurately and truthfully by defendant Hillary, plaintiff's conduct constituted an actionable assault [12] and Hillary was entitled to a verdict in some amount. The jury, entrusted with the prerogative and charged with the duty of determining where the truth lay, obviously rejected plaintiff's emphatic denials and accepted Hillary's account. We have no license or right to do otherwise. Marts v. Powell, 176 Mo.App. 124, 161 S.W. 871, 872–873(4); Lemmons v. Robertson, 164 Mo.App. 85, 148 S.W. 189, 190. See again Ransom v. McDermott, supra, 246 N.W. loc. cit. 267.

 As bearing on whether the verdict for $250 was excessive, we note the statement of defendant Ralph that, when he returned home on the evening of the alleged assault, he found his wife "in a mighty nervous condition" and that "she laid in * bed until Tuesday (the following) morning and shook like a leaf in the spring." Although (as plaintiff's counsel point out) Hillary "had been under a physician's care and had taken medication for some time prior to the alleged incident," Ralph testified *without objection* that Hillary's attending physician said that her nervous condition "was aggravated" by the assault under discussion, and Hillary testified, likewise *without objection,* that the alleged assault "definitely worsened my condition and since then I have developed ulcers"—"the doctor said it could have been aggravated and brought on by my nervous state." What Hillary's attending physician had said was rank hearsay and, on timely and proper objections, should have been excluded; but, having been received without complaint, the jury was at liberty to give this testimony its natural probative effect.[13] On the record before us, we are unable to find that the verdict for $250, encompassing both actual and punitive damages, was excessive.[14]

It is the judgment of this court (a) that, if defendants will, within fifteen days from the date hereof, enter in this court a remittitur in the sum of $458.30, the judgment on the first count of the counterclaim will be affirmed for $41.70 as of the date of its entry in the trial court, but that otherwise the judgment on the first count will be set aside and the cause remanded for a new trial thereon, and (b) that the judgment for $250 on the second count of defendants' counterclaim is affirmed.

McDOWELL and RUARK, JJ., concur.

12. Holloway v. Shepardson, 364 Mo. 14, 258 S.W.2d 656; Marts v. Powell, 176 Mo.App. 124, 161 S.W. 871; Booher v. Trainer, 172 Mo.App. 376, 157 S.W. 848; Lemmons v. Robertson, 164 Mo.App. 85, 148 S.W. 189.

13. Goodman v. Allen Cab Co., 360 Mo. 1094, 232 S.W.2d 535, 539; DeMoulin v. Roetheli, 354 Mo. 425, 189 S.W.2d 562, 565(3); Burley v. State Social Security Commission, 236 Mo.App. 930, 163 S.W. 2d 95, 96(2); Madison v. Taxi Owners Ass'n., Mo.App., 148 S.W.2d 106, 108 (5); Tralle v. Chevrolet Motor Co., 230 Mo.App. 535, 92 S.W.2d 966, 971(8); Lanahan v. Hydraulic-Press Brick Co., Mo.App., 55 S.W.2d 327, 332; Munton v. A. Driemeier Storage & Moving Co., 223 Mo.App. 1124, 22 S.W.2d 61, 63(3). See also State v. Willis, Mo., 283 S.W.2d 534, 537(2); Reeves v. Thompson, 357 Mo. 847, 211 S.W.2d 23, 27(5).

14. Marts v. Powell, supra; Booher v. Trainer, supra; Lemmons v. Robertson, supra; Liljegren v. United Rys. Co., Mo.App., 227 S.W. 925; Ransom v. McDermott, 215 Iowa 594, 246 N.W. 266; Martin v. Jansen, 113 Wash. 290, 193 P. 674, affirmed 113 Wash. 290, 198 P. 393; Hatchett v. Blacketer, 162 Ky. 266, 172 S.W. 533; Ragsdale v. Ezell, 49 S.W. 775, 20 Ky.Law Rep. 1567; Craker v. The Chicago & Northwestern R. Co., 36 Wis. 657, 679. See Williams v. Collins, 180 Mo.App. 146, 167 S.W. 1189, and Linville v. Green, 125 Mo.App. 289, 102 S.W. 67.