Macfarlane, J.
The suit is to recover damages for personal injuries caused, as alleged, by the negligence of defendant in running one of its trains through the town of Higginsville. A trial before the court and a jury resulted in a verdict and judgment for plaintiff for $6,000, and defendant appealed.
The petition counted upon negligence in running and managing one of its trains as it passed through the *413 town -of Higginsville and the running of said train through said town, and its public streets, at a rate of speed prohibited by ordinance. The answer was a general denial and plea of contributory negligence.
On the trial it was shown that the city of Higgins-ville was, at the time of the accident, incorporated as a city of the fourth class, and there was in force an ordinance prohibiting railroad companies from running trains within its limits at a rate of speed in excess of six miles per hour.
Russell street, running north and south, is the principal street of said city, upon which most of the business is done, and upon which there is much travel by pedestrians and others. Defendant’s railroad runs easterly and westerly through said town, crossing said street, and separating the business portion of the town on the north from a residence part of the town on the south. Defendant’s depot is on the east side of the street, the platform thereof extending to the sidewalk on the east side of the street. This sidewalk extended, passes over the railroad and is used by pedestrians in crossing the railroad. The railroad has two tracks crossing this street, the main track on the north, and the other a side track. These tracks are about six feet apart. Defendant operates over its road from Kansas City to Chicago a daily scheduled train, known as the “Hummer.” This train from Kansas City was due at Higginsville at about 8 o’clock in the evening, but did not stop there.
Plaintiff was a negro boy eleven years of age and lived with his mother about four blocks, or a quarter of a mile, south of the railroad. On the evening of May 6, plaintiff was sent by his mother to the post office. The “Hummer” from Kansas City passed through town at about the schedule time, running at a rate of speed variously estimated at from ten to forty *414 miles per hour. Immediately after it passed over Russell street the cries of a boy were heard and plaintiff was found lying between the main and side tracks, about fifteen feet east of the east line of the street, with both of his legs crushed so that amputation afterward became necessary. The train, the engineer said, was running at the rate it usually runs through there. Another witness says that it was running thirty or foity miles per hour, “as fast as they ever go over the crossing.”
It was shown that the road west from Russell street was comparatively straight and a train could be seen from any point on the said sidewalk within fifty feet of the track, on the north side, for a distance of from three to five hundred yards. A number of witnesses standing near the track saw this train that distance. The headlight was burning, the whistle was sounded, and the engine bell was kept ringing as the train approached.
Plaintiff testified that he had been to the postoffice and on returning when he got to the railroad he looked up and down the track, saw no train, started across the track, and the train hit him. On cross-examination he testified, further, that he lived on the south side of the railroad, and had been over the town and across the railroad many times before. Came from the postoffice along the walk on the east side of Russell street.' Stopped and looked for a train as he went to the postoffice. As he returned, when within four or five feet of the track, he looked for the train. Was struck when crossing. Did not know whether he had got clear across. Did not know what part of the'train struck him. Did not see the train at any time. Saw no one at the crossing. Did not stop, but looked up and down the crossing and kept on walking. Did not know a train came along about that time.
*415 Eloyd Smiley, a witness for plaintiff, testified that he was twelve years old. Was news agent. Was at the depot -on the occasion of plaintiff’s injury. Saw the train when about the mill (which was shown to be between two and three hundred yards). He was then questioned and his answers given.
“Q. State whether or not you saw anybody attempting to cross over there? A. Yes, sir.
UQ. Who was it? A. I do not know, I did not know whether it was a black person or white.
UQ. Was it a man or boy? A. It looked like a boy.
UQ. Where was he coming across? A. At Eussell street crossing.
UQ. What became of the person that started across there? A. I don’t know; can’t say. I did-not see him.”
On cross-examination he testified:
Went to the train to get papers. Stood about fifty feet from the sidewalk. Hearing the whistle and bell first attracted his attention to the train. Saw the headlight. Was looking at the train until it passed the crossing and continued.
UQ. Did you see anyone on the crossing? A. No, sir I never saw anyone standing still.
UQ. Where was this train when you saw the person go over the crossing then? A. Just a little this side of the mill switch.
“Q. You saw the boy? A. Yes, sir.
“Q. Where did the boy cross the track? A. Eight on the crossing on sidewalk.
‘ ‘ Q. How far was the train when he went off the crossing? A. About two hundred feet.”
He testified that he was standing four or five - feet from the main track and fifty feet from the sidewalk. Noticed the train until it passed over the crossing and saw no one struck.
*416 A number of witnesses, eight or ten who were within fifty feet, some nearer, and who watched the train pass, all testified that they saw no one on the crossing when the train got to it. No witness saw plaintiff struck. One witness testified that as the train came up he saw a colored boy running on the sidewalk, from the south, toward the track, but the train came between him and the boy and he saw no more of him. Another witness testified that as the train was going over the walk, looking under it he saw a boy on the south side of the train “making motions, and seemed like he was catching to the train or something.” Two witnesses testified that when they got to the boy they asked him how he got hurt and he answered that he was holding out his hand to the train and it ran over him.
At the close of all the evidence defendant asked an instruction in the nature of a demurrer to the evidence which was refused. The court gave nine instructions for plaintiff and thirteen for defendant. "We only give those which merit special consideration. These two were given at request of defendant.
“Number5. The court instructs the jury if they believe from the evidence in the case that plaintiff was not struck by the engine, and was in a place of safety when it passed him, but after it; had passed him, and and while he was by the defendant’s track, he came so near the said train and was struck and injured by any part of it, then he can not recover, and the verdict of the jury will be for the defendant.”
“Number 7. The court instructs the jury that although they may believe from the evidence in the case that the plaintiff, while on Russell street and when within three or four feet or nearer to the defendant’s track, looked up and down the track and did not discover a train, yet, if the jury further believe, that at the time he did so look there was on the track, in plain *417 view, a rapidly approaching train, with a ringing hell and a lighted headlight, and that plaintiff continued his walk and went upon said track and was struck by defendant’s engine or cars, then the plaintiff can not recover and the verdict will be for the defendant.”
These two were given at request of plaintiff:
“Number 4. The jury are instructed that the plaintiff had the right to cross defendant’s road at a public crossing, and in doing so he had the right to presume and act upon the presumption that defendant in running its trains would exercise ordinary care and would not run the same at an unlawful rate of speed, and if the jury believe from the evidence that in endeavoring to cross the track, at a public crossing, the plaintiff was struck and injured, that at the time the train of defendant was running at an unlawful rate of speed as defined by other instructions, and if you further believe from the evidence that the rate of speed was the direct or proximate cause of the injury, then you will find for the plaintiff.”
“Number 7. One of the defenses in this case interposed by the defendant is that of negligence on the part of plaintiff, Claude Payne, directly contributing to the injuries of which plaintiff complained and the court instructs the jury that the law devolves upon the defendant the burden of proving such negligence by a .preponderance of the evidence and it is not sufficient that the jury may believe from the evidence that the plaintiff was simply guilty of negligence, but that the negligence of plaintiff and not that of the defendant must be the proximate or immediate cause of the injury to excuse the defendant from liability.”
I. Defendant insists that its instruction in the nature of a demurrer to the evidence should have been given for two reasons: First, because the only negligence on the part of defendant which the evidence tended to *418 prove, was a violation of the ordinance of the city regulating the rate at which trains should be run through the city, and there was no evidence tending to prove that such negligence was the cause of the injury; and, second, because the evidence conclusively shows that the negligence of plaintiff directly contributed to his injury.
As to the first proposition it is not claimed that, under the rulings of this court, running a train in a city at a rate of speed prohibited by a valid ordinance is not, of itself, negligence. This rule is too well settled to admit of question. But it is said that there was no evidence that such negligence in this case was a direct and proximate cause of the injury.
The negligent act and the injury occurring cotemporaneously, in case the evidence failed to show another cause, it became a question for the jury to determine, from all the evidence, whether such negligence was in fact the proximate cause. The evidence .was sufficient to authorize the jury to draw that inference. Bluedorn v. Railroad, 121 Mo. 268.
II. The question of contributory negligence must be considered in view of the age, understanding and intelligence of plaintiff. It can not be said, as a matter of law, in all cases and under all circumstances, that a boy of eleven years of age, and possessed of ordinary intelligence, has, or has not, the judgment and discretion which would charge one of maturer years with contributory negligence. Each case must be decided in respect to the particular child and the circumstances attending the particular injury. If there is no doubt whatever of the capacity of the child to know and avoid the danger in the particular case, it would be the duty of the court to decide, as a matter of law, whether the capacity was wanting, or existed. If there is doubt, then the jury should decide whether, considering the *419 age and understanding of the child, the injury might, under the circumstances, have been avoided by the exercise of that care and discretion which might be reasonably looked for in such person. Beach, Contrib. Neg., secs. 117, 136; Patterson, R’y Acc. Law, sec. 72; Ridenhour v. Cable R’y Co., 102 Mo. 286, Spillane v. Railroad, 111 Mo. 555; Burger v. Railroad, 112 Mo. 238.
The evidence gives us but little information as to the intelligence of plaintiff of his knowledge of running trains. We only learn his age and race, and the facts that he lived within four blocks of the railroad, and had frequently been over this crossing. We can only assume that he was possessed of the capacity of an ordinary negro boy, and of the knowledge that trains ran over the road and would injure one who might be struck by them. Plaintiff testified that before going upon the track he looked in both directions to see if a train was coming, thus demonstrating his knowlege of the danger to be apprehended in crossing. If, at the time he looked, when within four or five feet of the track, as he says, the train was near enough to strike him before he crossed, it is very evident that his looking and listening were not as careful as would be exacted of an ordinary person of mature years and understanding, else he could but have both seen and heard it. All persons, less favorably situated, saw and heard it for several hundred yards before it reached the crossing. But we do not think that the capacity of plaintiff, as shown by the evidence, was sufficient to charge him in law for the negligent manner in which he looked. The question, under the circumstances and surroundings, was one for the jury.
III. Defendant complains of instruction 7 given the jury at the request of plaintiff. The complaint is *420 that the instruction improperly defines contributory negligence.
Contributory negligence, as the word imports, implies the concurring negligence of both plaintiff and defendant. The phrase is defined by Beach as follows: “Contributory negligence, in its legal signification, is such an act or omission on the part of a plaintiff, amounting to a want of ordinary care, as, concurring or cooperating with the negligent act of the defendant, is a proximate cause or occasion of the injury complained of.” Beach, Cont. Neg. [2 Ed.] sec. 7. The definition given by Shearman & Redfield in their work on Negligence (sec. 61) is in substance and effect the same.
If the negligence of either plaintiff or defendants is the sole cause of the injury there could be no contributory negligence in the case. The question for the jury is whether the plaintiff could “by the exercise of such care and skill as he was bound to exercise, have avoided the consequence of the defendant’s negligence.” Lord Blackburn, L. R. 3 App. Cas. 1207. See, also, 4 Am. & Eng. Encyclopedia of Law, 18 and 19. It is clear that there could be no contributory negligence unless there was also negligence of defendant to which that of plaintiff could contribute. Unless the negligence of defendant was the proximate cause of the injury there could be no liability. Unless the negligence of plaintiff was a proximate cause of the injury, his action, on the ground of contributory negligence, would not be defeated.
Testing the instruction by these rules it can not be approved. It tells the jury that “the negligence of plaintiff, and not that of defendant, must be the proximate or immediate cause of the injury to excuse the defendant from liability.” They were told in effect that this result would follow though “plaintiff was simply *421 guilty of negligence.” The jury may as well have been told that to defeat a recovery on the plea of contributory negligence, it was necessary to find that the negligence of plaintiff was the sole proximate cause of the injury. The instruction ignored entirely concurring or contributory negligence of both parties, which is one essential element of contributory negligence. There are no degrees which distinguish the negligence made necessary by the law to defeat a recovery. And negligence which is proximate or a cause of the injury is sufficient. It does not matter that the concurring and cooperating negligence of defendant was negligence per se, such as the violation of an ordinance, as in this case or statute law.
The instruction is also misleading wherein it informs the jury that in order for defendant to establish its plea of contributory negligence “it is not sufficient that the jury may believe from the evidence that plaintiff was simply guilty of negligence,” and as qualified or explained, by what follows, does not correctly declare the law. The negligence to defeat a recovery must be a proximate cause for the injury, but need not be the sole proximate cause.
As the evidence on the issue of contributory negligence was very clear we think the errors in this instruction prejudicial and must cause a reversal. It is true that the court, by instructions given at request of defendant, fully and most favorably instructed the jury on the question of contributory negligence. But the qualification of negligence improperly made by this instruction, read with those given defendant, would naturally be taken by the jury as a qualification also of the latter; otherwise they would be in direct conflict.
IY. There was error in instructing the jury that plaintiff “had the right to presume, and act upon the presumption, that defendant, in running its trains, *422 would exercise ordinary care, and would not run the same at an unlawful rate of speed.” A presumption that every one will obey the law, rests upon the fact that dutiful citizens do obey it. The presumption is at once rebutted when it appears that the law is habitually violated. It was shown by the evidence in this ease that the ordinance of the city was, on the occasion of plaintiff’s injury, flagrantly violated' by defendant. It also appears from the evidence that this was a regular scheduled train, and it was running through the town on this occasion at its usual speed. Plaintiff lived within four blocks of the Russell street crossing, which was between his home and the post office, and business part of the town. These were facts from which the jury might have inferred that plaintiff knew the unlawful speed at which the train was usually run. The presumption declared is disputable. A defense was contributory negligence. The burden of sustaining this defense was on, defendant, but the jury should have been left to make such finding as they considered just on that issue, without casting into the balance a reference to a “presumption” which the evidence tended to rebut. Moberly v. Railroad, 98 Mo. 183; Lynch v. Street R’y Co., 112 Mo. 433; Weller v. Railroad, 120 Mo. 651.
Besides, plaintiff testified that, though he looked, he saw no train, and that he did not. know that one was then due. If he never saw or heard a train, as he says, it is clear that he did not act upon the presumption that it would not be run in excess of the prescribed rate of speed. The instruction gave plaintiff the benefit of a presumption which he does not pretend to have acted upon and which the evidence shows he could not have indulged. An instruction must be* predicated upon the evidence and there was no evidence justifying this one.
*423 Y. If instruction 7 given defendant properly declared the law, the jury wholly disregarded it. Taking plaintiff’s evidence as true there is no dispute of any single fact which is made necessary to require a verdict for defendant. The instruction in effect directs a verdict for defendant. To overcome the positive direction of the court the jury must have disbelieved the testimony of plaintiff in respect to looking for a train before going upon the track. Yet rejecting the evidence of plaintiff no case was made which should have been submitted to the jury. The jury evidently disregarded the instruction and the trial court should have set aside the verdict for that reason if for no other. Indeed, with the view of the law declared by the instruction, ■ the court should have peremptorily directed a verdict for defendant.
But we think the instruction went too far. An adult person is required to use care in looking for a train before venturing upon the track. A boy of the age, and possessing the intelligence and discretion, of plaintiff is only required to use such care in looking as might reasonably be expected of him. If plaintiff failed to see the train when he looked, he certainly did not look with that care required of an adult, but it was for the jury to say whether he looked with the care required of one of his age, knowledge, intelligence and discretion.
If, after plaintiff had crossed the track, and as the train was running over the crossing, he came back so near to it as to- be struck, we are of the opinion he should not recover. Such an act of pure rashness can not be excused, even in a boy of the age and capacity of plaintiff. In such case also the negligence of the defendant would not be the proximate cause of the injury. We think, therefore, that there was ho error in giving instruction 5 for defendant.
*424 The suggestions contained in this paragraph are made in view of the necessity of a retrial of the case. Judgment reversed and cause remanded.
Brace, O. J., and Barclay, Gantt, Burgess and Robinson, JJ., concur. Barclay, J., concurs on the ground stated in the fourth paragraph. Sherwood, J., is of the opinion that plaintiff was guilty of such contributory negligence as should reverse the judgment.