**John F. SCHULTE, d-b-a Schulte Realty Company (Plaintiff), Appellant,**

v.

**Lester P. CRITES and Lloyd Crites (Defendants), Respondents.**

No. 30115.

St. Louis Court of Appeals.

Missouri.

Dec. 2, 1958.

J. O. Swink, Farmington, for appellant.

R. P. Smith, Cape Girardeau, for respondents.

DOERNER, Commissioner.

This action was instituted by John C. Schulte, doing business as Schulte Realty Company, and Jesse Cox, real estate brokers, to recover a commission claimed to be due them from the defendants for breach of a real estate brokerage contract of employment. From a judgment in favor of the defendants, plaintiff Schulte has appealed.

This is the second appearance of this case in this court. In our prior opinion, 300 S.W.2d 819, it was stated that on and prior to May 1, 1953, defendant Lester P. Crites was the owner of a tract of land of 1,113 acres. As of that time the property was encumbered by a first deed of trust given to secure a note for $14,000 executed by both defendants, which note and deed of trust were owned by Walter Q. Adams; and by a second deed of trust to secure a note for $5,900 payable to and held by John R. Roberts, also executed by both defendants. Defendant Lester P. Crites had also executed a deed of trust on a contiguous tract of land to secure a $750 demand note payable to and owned by Harris Motor Car Company. On that date defendants gave Schulte Realty Company and Jesse Cox the exclusive brokerage contract in question, effective for a period of one year. Subsequently, but within that

time, and without advance knowledge of the plaintiffs, defendants conveyed the land to Roberts under an agreement whereby Roberts cancelled the defendants' note to him and paid the balances due on the notes held by Adams and the motor car company, as well as the delinquent taxes, insurance premiums and abstract fees.

Defendants contended that the transaction with Roberts could not be regarded as a sale since they had received no consideration other than the extinguishment of their debts, and an instruction embodying that theory was given to the jury at their request. Following a verdict for defendants, the trial court sustained plaintiffs' motion for a new trial. On appeal, this court ruled that the defendants' transaction with Roberts was a sale; that the defendants' instruction misstated the law; and upheld the action of the lower court in granting plaintiffs a new trial.

The transcript discloses that the case was called for retrial on January 15, 1958, and that counsel for plaintiffs announced ready. Defendants' counsel verbally requested a continuance on the grounds that one of the defendants was in a hospital. The court pointed out that the case had been continued on two previous occasions; that the plaintiffs' counsel had been given only one day's notice of the defendant's hospitalization, which was then of two or three weeks duration; and stated that "in view of these facts and the discussion the Court has had with counsel in chambers concerning the issues to be submitted I think that the application for continuance must be denied and the case ordered to trial."

In the midst of the selection of the jury, counsel for defendants suggested the death of plaintiff Jesse Cox, which had occurred since the first trial. Judge Swink, who had been serving as counsel for both plaintiffs, thereupon stated that "We desire to dismiss or to withdraw Jesse Cox's name as plaintiff." The selection of the jury

was then completed, and the trial proceeded.

The only contested issue in the second trial was the amount of the consideration which Roberts had paid in extinguishing the various notes and for the back taxes, insurance premiums and abstract fees, which in turn would determine the amount of plaintiff's commission of 5%. On his own behalf, plaintiff testified on direct examination, without objection, that "Mr. Roberts paid $19,000 for it." On cross-examination he stated that he had heard Roberts testify at the previous trial that he had paid $19,000 for the farm. Plaintiff's witness William B. Greene testified that he had heard Roberts testify that he had paid "approximately $19,000." Theodore Wallers, also plaintiff's witness, likewise stated that he had heard Roberts testify that he had paid approximately $19,000 for the farm, but had not heard Roberts give the exact purchase price. Thereupon plaintiff rested, and on their part defendants only evidence was the brokerage contract, which they introduced as their exhibit.

At this point the trial court expressed some doubt as to whether there was substantial evidence regarding the sale price on which a verdict could be based, and over the defendants' objections, plaintiff thereupon reopened the case and read in evidence from the transcript of the first trial certain questions and answers which had been propounded to and answered by Roberts. In brief, they were to the effect that he lived in New Albany, Indiana; and that the property had cost him "in round numbers about $19,000."

Plaintiff then again closed his case. Defendants thereupon offered, and the court refused to give, an instruction directing the jury to return a verdict for defendants on the grounds that there was no substantial evidence upon which to base a verdict. Plaintiff offered and the trial court gave Instruction No. 1, which read:

"The Court instructs the jury that the sole and only matter for your consideration is the amount of commissions to be paid plaintiff, by the defendants and that therefore your verdict shall be for plaintiff in that sum which you find to be, or equal to, five (5%) per centum of the sale price of defendants' real estate acquired by John R. Roberts, as mentioned in the evidence."

As stated, the jury returned a verdict in favor of defendants, signed by ten of the jurors. Within the proper time plaintiff filed a motion to set aside the verdict and to enter judgment for $950 in his favor, or in the alternative to grant him a new trial, which was overruled.

■■ Plaintiff's first contention is that where there is no controversy as to the amount due, as in a case in which the ascertainment of the amount is only a mathematical computation, it is proper for the court to make the calculation and direct the jury to return a verdict for the amount due, including interest, and that the trial court erred in failing to do so, citing Home Trust Co. v. Josephson, 339 Mo. 170, 95 S.W.2d 1148, 105 A.L.R. 1063; and Olsen v. Bernie's, Inc., Mo., 296 S.W.2d 3. While the rule may be as contended, it has no application here. First, because plaintiff did not request the court to make a mathematical calculation and to direct the jury to return a verdict for that amount. Secondly, because it would have been error for the trial court to have done so, for in this case there was a controversy as to the amount which Roberts had paid for the property, and hence of the amount of the commission due plaintiff.

■ But plaintiff's second point, that the trial court should have refused to receive the verdict, is well taken. Under the facts and circumstances of this case, no issue remained as to whether or not defendants were obligated to pay plaintiff a commission. That question had been settled in favor of plaintiff by the prior decision of this court. As the parties recognized, the only issue which remained for determination was the *amount* of the commission. The trial court had ruled that there was substantial evidence on which to base a verdict, and had properly instructed the jury that the only fact to be determined by it was the amount of the verdict. When, therefore, the jury returned a verdict in favor of defendants it did so in complete disregard of the court's instruction. In Burrel Collins Brokerage Co. v. Hines, 206 Mo.App., 669, 230 S.W. 371, 373, it was said:

"The jury is bound to take the law from the court, and when the law is announced by the court it is the law of the case, until overruled by a higher authority.

"It naturally follows that a verdict in direct conflict with the law as laid down by the court is against the law. So far as the jury is concerned, there is no such thing as the charge by the court being contrary to law, because, whatever his charge may be, it is the law to them. The jury can no more be permitted to disregard the instructions of the court, and itself ascertain the law, than it would be permitted to go outside the evidence to find the facts. Such a course would destroy our system of keeping separate and distinct the powers of courts and juries, and would work confusion in the administration of the law."

The same rule was enunciated in Payne v. Chicago & Alton Railroad Co., 129 Mo. 405, 31 S.W. 885, 889, in which the court said:

"The jury evidently disregarded the instruction, and the trial court should have set aside the verdict for that reason, if for no other."

And see Barber v. McDonald, Mo.App., 245 S.W. 357; and Kamo Electric Coop. v. Earnest, Mo.App., 277 S.W.2d 876.

■ Furthermore, it is apparent that the verdict of the jury was not responsive to the pleadings, the theory on which the case was tried by the parties, as well as the instruction, and hence may not be allowed to stand. Smith v. Rodick, Mo. App., 286 S.W.2d 73; Cap-Keystone Printing Co. v. Tallman Co. Mo.App., 180 S.W.2d 802; Bigham v. Schneider, Mo. App., 157 S.W.2d 547; Weisels-Gerhardt Real Estate Co. v. Pemberton Investment Co., 150 Mo.App. 626, 131 S.W. 353. For these reasons the judgment must be reversed.

■ Defendants correctly point out in their brief that the contract sued on was a joint agreement in favor of both of the original plaintiffs, John F. Schulte, doing business as the Schulte Realty Company, and Jesse Cox, and that when the suggestion was made as to the death of Cox, the matter could not be prosecuted solely by the survivor, Schulte. The brokerage contract attached to the amended petition of the plaintiffs Schulte and Cox began:

"I hereby give Schulte Realty Jesse Cox of Perryville, Missouri, exclusive authority to sell the property described on the reverse side hereof."

The amended petition throughout refers to the obligation of the defendants to plaintiffs, and concludes with the prayer that plaintiffs recover judgment against defendants for $900 and costs. Obviously the contract was regarded and treated by both plaintiffs as a joint contract in their favor, and it was necessary that both parties sue upon it. Clark v. Cable, 21 Mo. 223; Rainey v. Smizer, 28 Mo. 310; Peters v. McDonough, 327 Mo. 487, 37 S.W.2d 530; Elmer v. Copeland, Mo.App., 141 S.W.2d 160. Hence when defendants suggested the death of Jesse Cox the action should not have proceeded until his personal representative could be substituted. Section 507.100, subd. 1(1) RSMo 1949, V.A.M.S. Gamble v. Daugherty, 71 Mo. 599; Slaughter v. Davenport, 151 Mo. 26, 51 S.W. 471; O'Rourke v. Kelly The Printer Corporation, 156 Mo.App. 91, 135 S.W. 1011. The attempted dismissal of Jesse Cox as a party plaintiff after the suggestion had been made of his death was a nullity, for upon the death of a party the authority of counsel who had represented him during his lifetime immediately ceases and terminates. Prior v. Kiso, 96 Mo. 303, 9 S.W. 898; State ex rel. Potter v. Riley, 219 Mo. 667, 118 S.W. 647; Chicago, R. I. & P. R. Co. v. Woodson, 110 Mo.App. 208, 85 S.W. 105.

It is therefore the recommendation of the Commissioner that the judgment be reversed and the cause remanded to the Circuit Court for further proceedings consistent with this opinion.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

The judgment of the circuit court of Madison County is accordingly reversed and the cause remanded to the circuit court for further proceedings consistent with this opinion.

RUDDY, P. J., and WOLFE, J., concur.

ANDERSON, J., not sitting.