Troy EARLS and Mary Earls,
Appellants,

v.

FARMERS PRODUCTION CREDIT
ASSOCIATION and Richard Dean
King, Respondents.

No. 15658.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 28, 1988.

Motion for Rehearing or to Transfer to
Supreme Court Denied Jan. 23, 1989.

Roy W. Brown and Bruce B. Brown, Kearney, for appellants.

Jo Beth Prewitt, West Plains, for respondents.

CROW, Presiding Judge.

This is an appeal from an order dismissing a first amended petition in which Troy Earls and Mary Earls are named as plaintiffs, and Farmers Production Credit Association ("FPCA") and Richard Dean King

("King") are named as defendants. The first amended petition was filed October 26, 1985. Paragraph 1 thereof alleges, among other things: "... Plaintiff, Troy Earls, is now deceased, having died on October ___, 1985."

■ The capacity to sue, be sued, or be a party appellant or respondent, reposes only in persons in being. *Farrar v. Moore*, 416 S.W.2d 711, 712[1] (Mo.App.1967). Defendants, so far as we can determine from the record, raised no issue in the trial court regarding the capacity of Troy Earls to maintain this action after his death, and their brief ignores the matter.

The notice of appeal, filed in the trial court March 14, 1988, some 29 months after Troy Earls died,[1] identifies the appellants as Troy Earls and Mary Earls.

In *Schulte v. Crites*, 318 S.W.2d 387 (Mo.App.1958), two real estate brokers sued two defendants to recover a commission claimed to be due the brokers for breach of a real estate brokerage contract of employment. After a verdict for the defendants the trial court granted the brokers' motion for new trial; that ruling was upheld on appeal. In the midst of jury selection for the second trial, counsel for the defendants suggested the death of one of the brokers (Cox), which had occurred after the first trial. The lawyer who had been serving as counsel for both brokers thereupon declared, "We desire to dismiss or to withdraw ... Cox's name as plaintiff." The trial proceeded, resulting in a verdict for the defendants. Judgment was accordingly entered and the surviving broker appealed.

The appellate court held that the contract sued on was a joint agreement in favor of both brokers, and that when the suggestion was made as to the death of Cox, the matter could not be prosecuted solely by the surviving broker. *Id.* at 391[5]. Consequently, said the court, when the defendants suggested the death of Cox the action should not have proceeded until his personal representative could be substituted. *Id.*

at 391[6]. The attempted dismissal of Cox as a party plaintiff after the suggestion of his death was a nullity, for upon the death of a party the authority of counsel who had represented him during his lifetime immediately ceases and terminates. *Id.* at 391[7]. The judgment was reversed and the cause was remanded.

In *Haley v. City of Linn Creek*, 583 S.W.2d 590 (Mo.App.1979), Marie Thompson brought an action against a municipality and other defendants seeking cancellation of leases and contracts, an accounting for rents and profits, and additional relief. After trial but prior to entry of judgment Ms. Thompson died. Thereafter the trial court entered judgment in Ms. Thompson's name, finding for her on some issues and against her on others. Ms. Thompson's former attorney subsequently filed a suggestion of her death and a motion for substitution of parties in the trial court. An order was thereafter entered substituting Ms. Thompson's executor as plaintiff. The executor then took an appeal from the judgment of the trial court.

The appellate court said:

"The judgment entered by the trial court has never been amended to reflect the substitution of [the executor] as plaintiff in the cause. It remains a judgment for and against a dead person. While substitution of parties upon the death of a litigant may allow continuation of an action in a proper case (§ 507.-100, RSMo 1978), it is apparent that no valid judgment can be rendered until such substitution is accomplished. *Cole v. Parker–Washington Co.*, 276 Mo. 220, 207 S.W. 749 (banc 1918); *Overstreet v. Overstreet*, 319 S.W.2d 49, 51–52 (Mo. 1958). The judgment in this case, entered in the name of the original plaintiff after her death, is absolutely null and void as there is no final and appealable judgment. The appeal is premature and must be dismissed." *Haley*, 583 S.W.2d at 591[3].

---

1. The trial court's order dismissing the first amended petition was entered February 10,

1988.

In *Schleifer v. Shuler*, 699 S.W.2d 794 (Mo.App.1985), Carol Wehrs was appointed guardian and conservator for Gail Schleifer. In that capacity Wehrs filed a negligence action against one Shuler, seeking damages for Schleifer. Shuler filed a motion to dismiss. Schleifer thereafter died. Shuler filed a suggestion of Schleifer's death. The trial court subsequently granted Shuler's motion to dismiss. No substitution of a party plaintiff had been made. After the dismissal a notice of appeal was filed, stating that "Plaintiff" appealed.

The appellate court, citing *Haley*, held that a judgment, whether for or against a plaintiff, entered after the plaintiff's death without substitution of parties, is void and there is no final, appealable judgment. *Schleifer*, 699 S.W.2d at 795[1]. The opinion noted an exception where the dismissal is under Rule 52.13(a)(1) for failure to serve a motion for substitution within 90 days after a suggestion of death is filed. *Id.* The exception did not apply in *Schleifer*, as 90 days had not passed when the action was dismissed, and dismissal was not for lack of a motion to substitute. *Id.* The appeal was dismissed for lack of a final, appealable judgment.

■ Mindful of the cases just discussed, we note that the original petition in the instant case was filed August 5, 1985, prior to Troy Earls' death. Although a copy of the original petition has not been included in the legal file, the parties agree in their briefs that the plaintiffs named in the original petition were Troy Earls and Mary Earls. Where a statement of fact is asserted in one party's brief and conceded to be true in the adversary's brief, we may consider it as though it appeared in the record. *Nastasio v. Cinnamon*, 295 S.W.2d 117, 119[1] (Mo.1956); *Hammack v. White*, 464 S.W.2d 520, 522[4] (Mo.App.1971).

The defendants filed a motion to dismiss the original petition; the motion was sustained September 24, 1985. The order of dismissal provided, however, that the dismissal "shall be held in abeyance" for a specified period during which the plaintiffs "shall be permitted to amend their pleading." Troy Earls died during the interval between the aforesaid order and the filing of the amended petition.

The amended petition is in three counts. Count I avers, in substance, that the plaintiffs were record owners of a 200–acre tract on which they operated a farming business which included raising, buying and selling hogs; that in 1973 the plaintiffs "began a debtor-creditor relationship" with FPCA, during which King, an "employee/officer" of FPCA, "actively counseled and advised" the plaintiffs about their financial affairs and farming business; that the plaintiffs "entrusted their financial planning" to FPCA and relied on it to properly advise them; that in July, 1979, King, in the scope and course of his employment, informed the plaintiffs about a plan devised by FPCA to expand the plaintiffs' farming business and construct new facilities for hogs; that King strongly recommended the plan and urged the plaintiffs to implement it, assuring the plaintiffs they had the ability to operate and manage an expanded operation and that expansion was necessary for economic growth; that in reliance on such representations and advice the plaintiffs accepted the plan and FPCA advanced money to finance construction, taking a promissory note secured by a deed of trust on the plaintiffs' farm; that the debt service and additional expenses of maintaining a larger hog herd, coupled with a drop in hog prices, forced the plaintiffs to borrow additional money from FPCA; that in August, 1981, FPCA, through King, informed the plaintiffs that no further money would be advanced and that the plaintiffs would have to liquidate their inventory and apply the proceeds to the outstanding debts; that the plaintiffs believed market prices would rise, but were nonetheless compelled by threats of foreclosure by FPCA to liquidate their inventory and apply the proceeds to the outstanding debt; that the plaintiffs were thereafter unable to continue their farming business and were consequently unable to pay off their remaining debts to FPCA and others; that after the liquidation hog prices rose substantially so that had the plaintiffs been permitted to keep their hogs and sell them at favorable prices they would have been

able to service their debt and continue their farming business; that in August, 1983, the plaintiffs filed for bankruptcy; that in March, 1985, FPCA conducted a foreclosure sale of the plaintiffs' farm; that FPCA placed a bid substantially below the outstanding debt; that no other bid was made, and the trustee declared the property sold to FPCA; that FPCA and King, in sundry respects, breached their duty to properly advise the plaintiffs about financial matters so as to ensure that the plaintiffs would maintain financial stability; that the derelictions of FPCA and King included failure to properly evaluate the negative financial consequences of expansion, failure to properly predict and evaluate future hog market conditions, failure to provide financial assistance when it would have kept the plaintiffs in business long enough to overcome their financial problems, and failure to consider options other than liquidation of the plaintiffs' entire inventory; that as a direct result of the aforesaid breach of duty and negligence the plaintiffs were damaged in the sum of $500,000. Count I prayed for judgment in that amount in favor of Troy Earls and Mary Earls against FPCA and King.

Count II incorporated by reference much of Count I, and added that by reason of the dealings between the plaintiffs and FPCA and King, a fiduciary relationship was created wherein the defendants "had a duty to act in good faith and with due regard to the interests" of the plaintiffs; that the defendants violated said duty in sundry ways including threatening foreclosure as a means of forcing the plaintiffs to liquidate their inventory, rejecting further loans to the plaintiffs to keep their business in operation, and placing a bid at the foreclosure sale substantially below the debt owed, thereby forcing the plaintiffs to complete bankruptcy proceedings in order to discharge the remaining indebtedness. Count II, as did Count I, prayed for judgment of $500,000 in favor of Troy Earls and Mary Earls against FPCA and King.

Count III alleged that the actions of the defendants were willful, intentional and malicious, and prayed for "punitive or exemplary damages" of a million dollars.

FPCA filed a motion to strike Count III on the ground that FPCA "is a federally chartered instrumentality of the United States and punitive damages cannot be asserted against the United States or its instrumentality without specific legislation authorizing such action." Both defendants filed a motion to dismiss the first amended petition on the grounds that:

1. It failed to state a claim upon which relief can be granted;

2. The action was barred by the statute of limitations;

3. The plaintiffs were not the real parties in interest and lacked the legal capacity to sue the defendants on the alleged cause of action, and

4. The trial court lacked jurisdiction over the subject matter of the alleged cause of action.

The case lay dormant for more than two years thereafter. On December 16, 1987, defendants filed suggestions in support of their motion to strike and their motion to dismiss. Regarding the latter, one of defendants' contentions was that inasmuch as the first amended petition alleged that the plaintiffs had filed for bankruptcy in August, 1983, the petition showed on its face that the plaintiffs were no longer the real parties in interest, as title to any causes of action of bankrupts vests in the trustee in bankruptcy upon the filing of the bankruptcy petition, and the bankrupts are not entitled thereafter to sue on any such cause of action absent abandonment by the bankruptcy trustee. Defendants insisted that the plaintiffs failed to list any cause of action against defendants in the plaintiffs' bankruptcy schedules, and that by reason thereof the trustee in bankruptcy could not be deemed to have abandoned any such cause of action.

On February 10, 1988, the trial court entered an order stating, in pertinent part: "... Court finds that this Court has no jurisdiction to proceed. 1st Amended petition dismissed."

The brief filed in this appeal by counsel of record for the named appellants, Troy

Earls and Mary Earls, presents two points, the first of which avers:

"The trial court erred ... by ruling that it was without jurisdiction and by dismissing plaintiffs' amended petition with prejudice. In light of the motion [to dismiss] and suggestions in support, the trial court must have based its findings on defendants' contention the plaintiffs' not being the real parties in interest and lacking the legal capacity to sue. Although defendants may have timely filed a motion to dismiss under Missouri Rules of Court 55.27, defendants waived this issue because of a failure to comply with the provisions of Rule 55.13, which require a specific negative averment supported by facts peculiarly within the pleader's knowledge. As a result of the waiver, the trial court may still sustain the motion to dismiss, but it cannot do so with prejudice to the plaintiffs. The plaintiffs have a right to request and receive leave to substitute the proper party and amend the petition to reflect such a change. Therefore, the dismissal with prejudice must be set aside and leave granted plaintiffs to substitute the bankruptcy trustee or other proper party."

The point clearly assumes the dismissal was with prejudice. FPCA and King, in their brief, do not challenge that assumption. Accordingly, we shall base our opinion on the premise that the trial court's order of February 10, 1988, purported to dismiss the first amended petition with prejudice.

■ Section 537.010, RSMo 1978, was in effect when Troy Earls died. It was carried forward unchanged in RSMo 1986. It provides:

"Actions for wrongs done to property or interests therein may be brought against the wrongdoer by the person whose property or interest therein is injured. If the person whose property or interest therein is injured or dead, the action survives and may be brought against the wrongdoer by the person appointed as fiduciary for the estate of the deceased person.... Such actions shall be brought and maintained in the same manner and with like effect in all respects as actions founded upon contracts."

In *State ex rel. Smith v. Greene*, 494 S.W.2d 55 (Mo. banc 1973), one Galt was driving a truck owned by his employer, carrying explosives. The truck was struck by rifle fire and exploded, killing Galt and destroying his clothing, money and personal effects. The administrator of Galt's estate filed suit against officials representing a class consisting of members of an international union and one of its locals. The petition averred that two union members were responsible for firing the fatal shot, that they were agents for the union at the time they did so, that the union was on strike against Galt's employer at said time, and that union officials had ordered harassment, threats and physical assaults on drivers who were working despite the strike. The petition sought actual damages of $100 (the alleged value of Galt's clothing, money and personal effects destroyed in the blast), together with punitive damages. The defendants filed a motion to strike the prayer for punitive damages; the trial judge announced his intention, unless prohibited, to grant the motion. The administrator thereupon sought prohibition.

The Supreme Court of Missouri applied § 537.010, RSMo 1969, which provided:

"For all wrongs done to property rights or interest of another, for which an action might be maintained against the wrongdoer, such action may be brought by the person injured, or, after his death, by his executor or administrator, against such wrongdoer...."

Section 537.010, RSMo 1969, above, was the predecessor of the current statute, bearing the same number, quoted earlier. The Supreme Court held § 537.010 was "declaratory of the common law." *Id.* at 57[1]. The opinion explained that contract actions, at common law, survived the death of either party. *Id.* at 57 n. 2. The opinion added that a statute in RSMo 1835, which had been carried forward virtually unchanged and which, at the time of *Smith*, had become § 537.010, RSMo 1969, had co-

dified the common law as it existed in 1816 when Missouri adopted the common law and had authorized survival of causes of action for wrongs to property rights or interests in the same manner and with like effect, in all respects, as actions founded upon contracts. *Id.* at 57.

The Supreme Court held that the facts in *Smith* gave rise to two separate causes of action, a statutory action for wrongful death which vested in the persons specified in the statute and which was not subject to Galt's creditors, and another for the destruction of Galt's personal property, which was for the benefit of his estate and was subject to his creditors. *Id.* at 58. The Supreme Court went on to hold that the cause of action for damage to Galt's clothing, money and personal effects survived his death, and that his administrator could seek both actual and punitive damages. *Id.* at 59–60.

In the instant case, Count I of the first amended petition, as we read it, attempts to plead a cause of action for loss of property (money, livestock and realty) by Troy Earls and Mary Earls due to the alleged negligence of FPCA and King. Count II, as we comprehend it, attempts to plead a cause of action for loss of the same property caused by breach of an alleged fiduciary relationship by FPCA and King. The jurisdictional statement in the brief filed by counsel of record for the named appellants proclaims that the instant case is a claim for damages in which the defendants are accused "of negligence and/or constructive fraud."

Whatever the theory of Count II may be, it is manifest that the first amended petition seeks recovery for property loss allegedly caused by the wrongful conduct of FPCA and King. It is likewise clear that *if* Troy Earls had a valid claim against those defendants at the time of his death by reason of their alleged misconduct, his claim survived and can be asserted by the person appointed as fiduciary of his estate. § 537.010, RSMo 1986; *Foster v. Hesse*, 43

S.W.2d 891, 892[1] (Mo.App.1931). *Cf. James v. Christy*, 18 Mo. 162 (1853); *Toomey v. Wells*, 218 Mo.App. 534, 280 S.W. 441 (1926).

Section 507.100, RSMo Cum.Supp.1984, was in effect when Troy Earls died. It was carried forward unchanged in RSMo 1986. It provides:

"1. (1) If a party dies and the claim is not thereby extinguished, the court shall on motion order substitution of the proper parties. The motion for substitution may be made by the successors or representatives of the deceased party or by any party...."

Rule 52.13, Missouri Rules of Civil Procedure (16th ed. 1985), was in effect when Troy Earls died. Rule 52.13 reads the same today as it did then. Paragraph "(a)" of Rule 52.13 provides, in pertinent part:

"(1) If a party dies and the claim is not thereby extinguished, the court may, upon motion, order substitution of the proper parties. Suggestion of death may be made by any party or person in interest by the service of a statement of the fact of the death as provided herein for the service of a motion. A motion for substitution may be made by any party or by the successor or representative of the deceased party.... Unless a motion for substitution is served within 90 days after a suggestion of death is filed, the action shall be dismissed as to the deceased party without prejudice.

&ast; &ast; &ast; &ast; &ast; &ast;"

In the instant case nothing on the trial court's docket sheet shows that a motion to substitute any party for Troy Earls was ever filed after his death. Additionally, nothing in the trial court's order dismissing the first amended petition indicates that the dismissal was, as to Troy Earls, without prejudice under Rule 52.13(a)(1) for lack of a motion for substitution within 90 days after a suggestion of his death was filed.[2]

We have before us an order that simply purports to dismiss with prejudice a suit in

---

**2.** As no contention is made that the allegation in the first amended petition that Troy Earls had died in October, 1985, amounted to a suggestion of his death within the meaning of Rule 52.-13(a)(1), we do not address that subject.

which one of the two named plaintiffs died between the time the suit was commenced and the first amended petition was filed. There is no averment in the first amended petition that upon the death of Troy Earls all claims asserted in the first amended petition became vested in Mary Earls alone, and no such hypothesis is advanced in the brief filed by counsel of record for the named appellants. Indeed, the naming of Troy Earls as an appellant is inconsistent with any such theory.

In such circumstances it is clear from *Schulte*, 318 S.W.2d 387, *Haley*, 583 S.W.2d 590, and *Schleifer*, 699 S.W.2d 794, that the trial court's order dismissing the first amended petition in the instant case with prejudice was, so far as it purported to terminate the claims of Troy Earls, a nullity.

Rule 74.01(b), Missouri Rules of Civil Procedure (19th ed. 1988), provides:

"When more than one claim for relief is presented in an action ... or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

Inasmuch as the trial court's order purporting to dismiss the first amended petition in the instant case was a nullity so far as the claims of Troy Earls were concerned, the order adjudicated fewer than all the claims. As the order contained no recital that it was adjudicating the claims of Mary Earls alone, and no express determination that there was no just reason for delay, it did not, by reason of Rule 74.01(b), terminate the action as to any of the claims or parties, and was subject to revision at any time before entry of a judgment adjudicating all the claims and the rights and liabilities of all the parties.

An appellate court lacks jurisdiction whenever the judgment appealed is not final. *Taylor v. F.W. Woolworth Co.*, 641 S.W.2d 108, 110[1] (Mo. banc 1982); § 512.020, RSMo 1986. It is our duty, *sua sponte*, to determine whether the trial court's order dismissing the first amended petition is appealable. *First State Bank of Caruthersville v. Blades*, 680 S.W.2d 441, 441–42[1] (Mo.App.1984); *Killian Construction Co. v. Tri-City Construction Co.*, 632 S.W.2d 49, 50[1] (Mo.App.1982).

Appealability of an order disposing of fewer than all of the claims between all of the parties was, prior to January 1, 1988, determined under Rule 81.06. *See: Speck v. Union Electric Co.*, 731 S.W.2d 16 (Mo. banc 1987), *opinion after retransfer*, 741 S.W.2d 280 (Mo.App.1987). Rule 81.06, however, was repealed effective January 1, 1988, Missouri Rules of Court (19th ed. 1988), p. 299, simultaneously with the promulgation of paragraph "(b)" of Rule 74.-01, quoted above. As the trial court's order dismissing the first amended petition in the instant case was entered after January 1, 1988,[3] appealability of the order is determined under Rule 74.01(b).

We have already seen that because the order was a nullity insofar as it purported to dismiss the claims of Troy Earls with prejudice, it adjudicated fewer than all the claims set forth in the first amended petition. We have likewise observed that as the order did not recite it was adjudicating the claims of Mary Earls alone, and included no express determination that there was no just reason for delay, it was, by virtue of Rule 74.01(b), subject to revision at any time before entry of a judgment adjudicating all the claims.

In the above respects the order is analogous to the order in *State ex rel. Schweitzer v. Greene*, 438 S.W.2d 229 (Mo. banc 1969). There a suit was filed against two defendants. One defendant (Patterson)

---

**3.** Footnote 1, *supra.*

was never served and never entered an appearance. The other defendant (Schweitzer) filed a motion to dismiss, which was granted. The suing parties later filed an amended petition, and an issue developed as to whether the order granting the motion to dismiss the original petition was a final appealable judgment. The Supreme Court of Missouri acknowledged that had Schweitzer been the only defendant, the order dismissing the original petition would have been a final appealable judgment, as the trial court would have lost jurisdiction of the case after expiration of 30 days following entry of the order. *Id.* at 231[1]. However, as the order did not dispose of the case as to defendant Patterson and the trial court did not designate the order as a final judgment for purpose of appeal, the order was interlocutory and could be changed by the trial court even after expiration of 30 days following its entry. *Id.* at 231–32[2]. Consequently, the order was not a final judgment. *Id.* at 232.

In the instant case, as observed earlier, the notice of appeal names both Troy Earls and Mary Earls as appellants. It is thus apparent that counsel of record for the named appellants assumed the order of dismissal disposed of the claims of both Troy Earls and Mary Earls, and it appears from the brief of FPCA and King that they made the same assumption. We are not, therefore, presented with an appeal taken exclusively by Mary Earls in which she claims the order of dismissal was final as to her alone per Rule 74.01(b).

As the trial court's order dismissing the first amended petition in the instant case could not, as explained earlier, dismiss the claims of Troy Earls with prejudice, we hold that the order is not a final judgment, and is hence unappealable. That being so the appeal must be dismissed; consequently, we do not reach the issues raised by either of the two points in the brief filed by counsel of record for the named appellants.

The appeal is dismissed and the cause is remanded to the trial court.

GREENE and FLANIGAN, JJ., concur.

HOLSTEIN, C.J., recused.

## ON MOTION FOR REHEARING OR, IN THE ALTERNATIVE, TO TRANSFER TO SUPREME COURT OF MISSOURI

PER CURIAM.

■ FPCA and King, in a motion for rehearing or, in the alternative, to transfer this case to the Supreme Court of Missouri, aver the trial court's order of dismissal was without prejudice. That is a departure from the position they maintained in their brief, where they argued, among other things, that the trial court did not err in dismissing the first amended petition as said petition did not state a claim upon which relief could be granted. An order sustaining a motion to dismiss a plaintiff's petition on the ground that it fails to state a cause of action constitutes a disposition of the plaintiff's claim on the merits, and if such order disposes of the whole case it is appealable. *Spires v. Edgar*, 513 S.W.2d 372, 373[2] (Mo. banc 1974).

■ With exceptions not applicable here, a dismissal without prejudice is not an adjudication on the merits, *Karney v. Wohl*, 747 S.W.2d 214, 216 (Mo.App.1988); *Ritter v. Aetna Casualty & Surety Co.*, 686 S.W. 2d 563, 564[6] (Mo.App.1985), and consequently does not constitute a final judgment from which an appeal can be taken. *Karney*, 747 S.W.2d at 216; *Miller v. Schultz*, 614 S.W.2d 11, 12–13[3] (Mo.App. 1981).

■ FPCA and King, in their brief, prayed us to "affirm the order and judgment of the trial court dismissing the petition herein." Such request is consistent with the premise that the order of dismissal was with prejudice, and thus appealable. FPCA and King did not, in their brief, ask that the appeal be dismissed on the ground that the order was without prejudice and hence unappealable.

Even now, in their post-opinion motion, FPCA and King tell us the trial court's order of dismissal should have been affirmed, a position inconsistent with the con-

tention in the motion that the order constituted a dismissal without prejudice. Had we treated the trial court's order as a dismissal without prejudice, our disposition of the appeal would have had to be the same as it is in our opinion—dismissal of the appeal.

The motion for rehearing or, in the alternative, to transfer this case to the Supreme Court of Missouri is denied.